CROSSWELL v. THE CONNECTICUT INDEMNITY ASSOCIATION.

1. INSURANCE.—Any person may insure his own life for the benefit of one who has no insurable interest in his life, if the transaction is not a cover to evade the law against wager policies.

2. IBID.—ASSIGNMENT.—An assignment of a life insurance policy, valid in its inception, by the assured and the beneficiary, with consent of the insurer, to one not having an insurable interest in the life, is valid, if not a device to evade the law as to wager policies. *Cases considered.*

3. IBID.—INSURABLE INTEREST.—A son has an insurable interest in the life of his mother, from the mere fact of such relationship, which, if nothing more appears, will support an assignment by the beneficiary to him of a policy procured by the mother on her own life for the benefit of the daughter.

4. EVIDENCE—INSURANCE.—An assignee of an insurance policy may testify that he had paid premiums on the policy before assignment.

5. CHARGE.—Complaint substantially alleged as stated in the charge.

6. IBID.—INSURANCE.—Portions of the charge excepted to properly state the law of insurance applicable to this case.

7. IBID.—Failure to charge a specific proposition is not reversible error, in absence of such request.

8. IBID.—Requests properly refused, because, as framed, they were not applicable to the issues.

Before BUCHANAN, J., Richland, November, 1896. Affirmed.

Action by T. M. Crosswell against The Connecticut Indemnity Association. Judgment for plaintiff. Defendant appeals.

*Messrs. Melton & Melton, W. D. Melton,* and *John T. Seibels,* for appellant, cite: *On Demurrer:* 26 N. Y., 422. *On Nonsuit:* 23 N. Y., 527; 104 U. S., 775. *What is insurable interest?* 104 U. S., 778; 12 Mass., 112; 6 Gray, 399; 15 Id., 249; 101 Mass., 564. *Relation of parent and child does not of itself give insurable interest:* 45 Me., 104; 47 Mo., 424; 50 Id., 48; 43 N. Y., 823; 46 Id., 674; 41 Ga., 338; 52 Mo., 213; 39 Conn., 104; 23 Id., 244; 94 U. S., 40; 80 Ill., 35; 81 Pa. St., 154. *Plaintiff must have pecuniary*

*interest in life insured:* 82 U. S., 643; 41 Ind., 116; 53 Id., 380; 76 Ala., 183; 101 Mass., 564; 81 Ala., 329; 81 Ky., 368; 36 Kan., 146; 68 Texas, 361; 112 Pa. St., 257.

*Mr. Allen J. Green*, contra, cites: *Policy not a wager:* 25 L. A. R., 627; 108 Pa., 656; 94 U. S., 457; 6 Gray, 399; 94 U. S., 567; 104 U. S., 775.

Nov. 9, 1897. The opinion of the Court was delivered by

MR. JUSTICE JONES. This action is on a life insurance policy, and the defendant appeals from a judgment thereon in favor of plaintiff.

1. The first question we will consider is, whether there was error in overruling defendant's demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, in that it states no insurable interest in the life of the insured on the part of the original beneficiary, or of her assignee, the plaintiff. The complaint alleged, among other things, as follows: Par. 2. "That on the 15th day of April, 1893, at Eastover, in the State of South Carolina, in consideration of the payment by Susan U. Crosswell of the sum of $43.21, annually, during her life, the defendant made and delivered their policy of insurance in writing, a copy of which is annexed as part of this complaint, and marked exhibit 'A,' and thereby insured the life of Susan U. Crosswell in the minimum sum of $1,000, conditioned to increase said sum by one per cent. for each policy year the said policy should run until the end of the tenth year, when the maximum should be reached. Par. 3. That on the 2d day of January, 1895, the said Susan U. Crosswell and Mary E. Cranford, the beneficiary named in said policy, duly assigned said policy to the plaintiff, who is the son of the said Susan U. Crosswell, and due notice and a copy of such assignment was given to the defendant, who assented to the said assignment and filed said assignment in its office." The policy attached to the complaint shows that it was

payable "to Mary E. Cranford, her daughter, if living; otherwise to the executors, administrators or assigns of said insured." It is, therefore, alleged in the complaint substantially that Susan U. Crosswell procured a policy of insurance on her own life, in consideration of the payment by her of the annual premiums, and made the same payable to her daughter, Mary E. Cranford, if living; otherwise to the executors, administrators or assigns of Susan U. Crosswell. And it further appears that the policy was assigned to the son of the insured by both the beneficiary and the insured, with the consent of the insurer. The demurrer was properly overruled.

It is firmly established that insurance procured by one person on the life of another, in which the party effecting the insurance has no interest, is void as a wager contract against public policy, which condemns gambling speculation upon human life. But it is also well settled that a person may insure his own life and make the policy payable to whomsoever he chooses, even though the beneficiary has no insurable interest in his life, provided the transaction is *bona fide*, and not a mere cover to evade the law against wager policies. 11 A. & E. Enc. Law, 318; Bacon on Ben. Soc. & Life Ins., § 249; May on Ins., 75B, § 535. In such case the interest which the insured has in his own life supports the policy, and prevents it from being condemned as a wager contract. Therefore, according to the allegations of the complaint, we have in this case a policy supportable by an insurable interest in the hands of the beneficiary, Mary E. Cranford.

Whether a policy, valid in its inception, may be afterwards, before the death of the insured, assigned to one having no interest in the life of the insured, has been much controverted, and the authorities are in hopeless conflict. See note to § 302, Bacon on Ben. Soc. & Life Ins., where the authorities pro and con are cited; also, note by Mr. Freeman, 57 Am. Dec., 103; also, note to 52 Am. Rep., 143. In this case the assignment by the

beneficiary to the plaintiff was with the consent of the insured and the insurer. If the assignment was not a device to evade the law against wager contracts, which we are bound to assume in the discussion of the demurrer to this complaint, then it is difficult to perceive why the contract, if valid in the hands of the beneficiary, is not also valid in the hands of the beneficiaries' assignee, the insured and insurer consenting. Those authorities which hold that the assignee of a life insurance policy must have an insurable interest in the life of the insured, rest upon the ground that the same reasons which condemn a policy procured by one without an insurable interest in the life insured, should also condemn an assignment to one without such interest. On this point we quote from May on Ins. Ed., 1891, sec. 398A, which is in brackets, showing that it is new matter: "Indeed, the doctrine that the assignment of a policy to one without interest in the life is as objectionable as the taking out of a policy without interest, does not seem good sense. If this be so, it is difficult to understand how the designation of a beneficiary outside of those having an insurable interest in the life can be upheld. There seems to be a clear distinction between cases in which the policy is procured by the insured *bona fide* of his own motion, and cases in which it is procured by another. It is a very different thing to allow a man to create voluntarily an interest in his termination, and to allow some one else to do so at their will. The true line is the activity and responsibility of the assured, and not the interest of the person entitled to the funds. It is well established that a man may take out a policy on his own life payable to any person he pleases, and it is drawing a distinction without a difference to hold that he can not take out a policy and afterwards transfer its benfits. An assignment by the beneficiary, or by an assignee, unless with the consent of the "life," is, however, a very different matter, and involves what seems to be the real evil that the law is blunderingly seeking to exclude, viz: the obtaining by B of insurance on the life of A, in contradis-

tinction to its obtainment by A for B's benefit." In the
case before us, the assignment by the beneficiary and the
"life," with the consent of the insurer, was practically a
substitution of the plaintiff as beneficiary. The following
authorities support the doctrine that a life policy, valid in
its inception, may be assigned to one having no insurable
interest in the life insured: *Clark* v. *Allen*, 11 R. I., 439;
s. c., 23 Am. Rep., 496; *Mutual Life Ins. Co.* v. *Allen*, 138
Mass., 31; s. c., 52 Am. Rep., 245, approved and largely
quoted from in Bacon Ben. Soc., etc., § 302; *St. Johns.* v.
*Ins. Co.*, 13 N. Y., 31; s. c., 64 Am. Dec., 529; *Olmsted* v.
*Keyes*, 85 N. Y., 593; *Bursinger* v. *Bank of Watertown*, 67
Wis., 75; s. c., 58 Am. Rep., 849; *Fitzpatrick* v. *Hartford
Life Ins. Co.*, 56 Conn., 116; s. c., 7 Am. St. Rep., 288;
*Murphy* v. *Red*, 64 Miss., 614; *Martin* v. *Stubbings*, 126
Ill., 387; s. c., 9 Am. St. Rep., 620; *Provident Life Ins. Co.*
v. *Baum*, 29 Ind., 236, reaffirmed in *Elkhart &c. Associa-
tion* v. *Houghton*, 103 Ind., 286; s. c., 53 Am. Rep., 514.
See, also, *Fairchild* v. *North Eastern Mut. Life Ass.*, 51 Vt.,
628; *Harrison* v. *McConkey*, 1 Md. Ch., 34; *Souder* v. *Home
&c. Society*, 72 Md., 511; *Eckel* v. *Renner*, 41 Ohio St., 232;
*Succession of Hearing*, 26 La. Ann., 326; *Langdon* v. *Union
Mut. Life Ins. Co.*, 22 Am. Law Reg., 385; 14 Fed. Rep.,
272; *Cunningham* v. *Smith*, 70 Penn. St., 450; *McFarland*
v. *Creath*, 35 Mo. App., 112, cited in May on Ins., sec. 398.

The cases of *Cammack* v. *Lewis*, 15 Wall., 643, and *War-
noch* v. *Davis*, 104 U. S., 775, are cited as holding the con-
trary view. The case of *Cammack* v. *Lewis* stands upon
the ground that to procure a policy for $3,000 to cover a
debt of $70, is of itself a mere wager, the disproportion
between the real interest of the creditor and the amount to
be received by him, depriving the transaction of all pre-
tense to be a *bona fide* effort to secure a debt. The insur-
ance was taken out by Lewis, the husband of the complainant,
at Cammack's suggestion, who paid the premium for the
first year, and took an assignment of the policy. In the
case of *Warnoch* v. *Davis*, *supra*, the defendant, previous

to the issuance of the policy, had entered into an agreement with the insured, looking to the procurement of said policy, and the assignment thereof to the defendant. Of these cases the Supreme Court of Massachusetts, in *Ins. Co.* v. *Allen*, *supra*, said they "were both cases in which the policies were taken out by the procurement of the assignees, in order that they might be assigned to them under such circumstances as that they might well be held to be in evasion of the law prohibiting gaming policies. The remark of Mr. Justice Fields, in the latter case, that 'the assignment of a policy to a party not having an insurable interest, is as objectionable as the taking out of a policy in his name,' was not necessary to the discussion." On the contrary, in *Ætna Life Insurance Co.* v. *France*, 4 Otto, 561, the Court said: "As held by us in the case of the *Ins, Co.* v. *Schaefer* (4 Otto, 457), just decided, any person has a right to procure an insurance on his own life, and to assign it to another, provided it be not done by way of cover for a wager policy." Again, in *Mutual Life Ins. Co.* v. *Armstrong*, 117 U. S., 591, the Court said: "A policy of life insurance without restrictive words is assignable by the assured for a valuable consideration, equally with any other chose in action, where the assignment is not made to cover a mere speculative risk, and thus evade the law against wager policies, and payment thereof may be enforced for the benefit of the assignee, and, under the system of procedure in many States, in his name."

It cannot be denied that there are cases which do support the view that an assignment of a life insurance policy to one having no interest in the life insured, is void. See *Missouri Valley Life Ins. Co.* v. *Sturgers*, 18 Kan., 93; s. c., 26 Am. Rep., 761; *Basye* v. *Adams*, 81 Ky., 368; *Helmetag's Admr.* v. *Miller*, 76 Ala., 183; s. c., 52 Am. Rep., 316; *Gilbert* v. *Moose*, 104 Penn. St., 74; s. c., 49 Am. Rep., 570; *Roller* v. *Moors*, 86 Va., 512; s. c., 10 S. E. Rep., 241. Perhaps *Price* v. *Knights of Honor*, 68 Tex., 361; but see *Equitable Life Ins. Co.* v. *Hazlewood*, 75 Texas, 338;

s. c., 16 Am. St. Rep., 893, wherein the Court holds that an assignment of a valid policy to one having no insurable interest in the life insured, or the naming of such a one in the policy as beneficiary, does not invalidate it. In such a case, the assignee or beneficiary may collect and apply the proceeds to the extinguishment of his debt, if he have one, and such sums as he may have disbursed for the purpose of keeping the policy alive, and the surplus must be paid to the heirs of the insured. This seems to recognize the right of an assignee without interest in the life insured, when the assignment is consented to by the insurer, as against the insurer, to collect the policy and apply the proceeds to those legally entitled thereto.

We think both reason and authority sustain our conclusion that a life policy of insurance, valid in its inception, may be assigned to one having no insurable interest in the life insured, with the consent of the "life" and the insurer, if the assignment is *bona fide*, and not a device to evade the law against wager policies. Upon this ground, therefore, the Court did not err in overruling the demurrer.

We are prepared, however, to go further, and say that the allegation, that the beneficiary is the daughter and the assignee the son of the insured, is a statement of facts from which an insurable interest in the beneficiary and the assignee may be inferred, in the absence of anything tending to show that, notwithstanding such relationship to the insured, the transaction was a mere cover for a gambling speculation in the mother's life. A son or daughter is presumed to have an insurable interest in the mother's life by the mere fact of relationship, this fact alone appearing. It is incumbent on the insurer, when the fact of such relationship is established, to show that, notwithstanding such fact, the policy or its assignment was but a gambling speculation in human life. What is an insurable interest in a life? Mr. May, sec. 102a, says: "To have an insurable interest in the life of another, one must be a creditor or surety, or be so related by ties of blood or marriage

as to have reasonable anticipation of advantage from his life." In the case of *Ins. Co.* v. *Schraeder, supra*, the Supreme Court of the United States quoted and concurred in the declaration of the Supreme Court of Massachusetts, in *Loomiss* v. *Ins. Co.*, 6 Gray, 399, "that a parent has an interest in the life of a child, and, *vice versa*, a child in the life of a parent, not merely on the ground of a provision of law, that parents and grand-parents are bound to support their lineal kindred when they stand in need of relief, but upon considerations of strong morals and the force of natural affection between near kindred, operating often more efficaciously than those of positive law." To the same effect, see *Warnoch* v. *Davis*, 104 U. S., 775, where the Court said: "It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation, for a parent has an insurable interest in the life of his child, and a child in the life of his parent, a husband in the life of his wife, and a wife in the life of her husband. The natural affection in cases of this kind is considered as more powerful, as operating more efficaciously, to protect the life of the insured than any other consideration. But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured." The case of *Ins. Co.* v. *France*, 4 Otto, 561, was a case wherein a brother had taken out a policy on his own life for the benefit of his sister. The Court said: "The contract of insurance, as correctly construed by the Court, was made with Chew; and the relationship of the parties was such as to divest the assignment of the policy, or the direction of its payment to his sister, of all semblance of a wagering transaction. Under the circumstances, it matters not if the money or notes required for paying the premium did come from Mrs. France, at most it was by way of advance on her brother's account and on his contract. He had a right to take out a policy on his own life for his sister's benefit, and she had a right

to advance him the necessary means to do so.   As between strangers, or persons not thus nearly connected, such a transaction would be evidence to go to the jury, from which, according to the circumstances of the case, they might or might not infer that it was mere gambling.   But as between brother and sister, or other near relations, desirous and thus providing for each other, and (as said by Chief Justice Shaw) presumed to be actuated by 'considerations of strong morals and the force of natural affection between near kindred, operating often more efficaciously than those of positive law,' the case is divested of that gambling aspect which is presented, where there is nothing but a speculative interest in the death of another, without any interest in his life to counterbalance it."   In this case the sister was married, and in no way depended on her brother for support.   The policy in question was for $10,000.   There was evidence tending to show that Mrs. France had loaned about $2,400 to her brother at different times, $400 of which had been loaned in September, 1865, date of policy September 13th, 1865, but it also appeared that the brother in June previous had taken out another policy for $10,000 for the benefit of his sister.   It cannot be doubted that under the just and humane principles announced by the highest Court in the land, as shown in the quotations above given, a policy procured by a mother and made payable to her daughter, and by both mother and daughter assigned to the son, with the consent of the insurer, is presumed to be supported by an insurable interest.   All the authorities agree that a pecuniary interest will support the policy, such as the interest of a creditor in the life of a debtor, of the surety in the life of the principal, the husband in the life of the wife, and the parent in the life of a minor child, because such husband or parent is entitled to the services of the wife or minor child; the wife in the life of the husband, and the minor child in the life of the parent, because such wife or child is entitled to the support of the husband or father; and for the same reasons it has been held that where the law im-

poses a duty on parents or grand-parents to prevent children or grand-children from becoming dependent on public charity, and *vice versa*, such relations would sustain an insurable interest. But we think the view which limits an insurable interest, with respect to life insurance, to a mere pecuniary interest, is too narrow. This view, we think, in some measure, comes from an erroneous conception of the nature of the contract of life insurance. A policy of life insurance is not strictly a contract of indemnity, as marine or fire policies. Mr. May insists that the contract is one of indemnity, but concedes in sec. 117 that "the contract, in some of its phrases, is not merely a contract of indemnity, but includes that with a possibility of something more." But Mr. Bacon, in his work cited above, sec. 164, concludes "that though sometimes, as where a creditor insures the life of a debtor, the contract is in the nature of an indemnity, still, strictly speaking, a life insurance contract is not generally one of indemnity." This is the view of the United States Supreme Court. See *Ins. Co.* v. *Schaefer*, 94 U. S., 459; *Ins. Co.* v. *Bailey*, 13 Wall, 616. Life insurance "is simply a contract, so far as the company (insurer) is concerned, to pay a certain sum of money upon the occurrence of an event which is sure to happen, in consideration of the payment of the premiums as stipulated." Chief Justice Fuller, in 9 Sup. Ct. Rep., 44. "A mere contract to pay a certain sum of money on the death of a person, in consideration of the due payment of a certain annuity for his life. * * * This species of insurance in one way resembles a contract of indemnity." Baron Parke, in *Dalby* v. *India*, *&c.*, 15 C. B., 365. The Courts of New York, Pennsylvania, Massachusetts, Missouri, and doubtless other States, entertain this view of a life insurance. See 27 N. Y., 282; 84 Am. Dec., 284; 108 Penns. St.; 56 Am. Rep., 193; 138 Mass., 14; 52 Am. Rep., 248; 52 Mo., 213; 14 Am. Rep., 416. From the very nature of a fire insurance policy, it being a contract of indemnity strictly, it is necessary that the policy holder shall have an insurable pecuniary interest

in the subject of insurance, not only at the inception of the contract, but at the time of the loss by fire.    This is true, without reference to the law against wager policies.    But with respect to life insurance, except when purposely based on some contractual relation, as to which death might entail loss of a pecuniary nature, the matter of "insurable interest" is important only in ascertaining whether the contract is obnoxious to the public policy which condemns gambling on the continuance of human life, because such speculative contracts are supposed to tend to bring about the death of the insured, by creating an interest in his death.    "The essential thing (in life insurance) is that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the assured has no interest."    *Ins. Co.* v. *Schaefer, supra.*

To meet the charge that the contract is a mere wager, it becomes important to show that the person procuring the insurance has an interest also to preserve the life of the insured.    This prevents the contract from being a *mere* wager, although all contracts based on the happening of an uncertain event, or on the uncertain time when a sure event will happen, are in their nature speculative.    All agree that a pecuniary interest will save the policy, at least to the extent of the interest, but does a mere pecuniary interest afford the best or strongest guaranty to society that the insured's life will not be destroyed by the holder of the policy?    What, then, is to protect society against the danger that, from that standpoint, lurks in a contract of insurance by a creditor on the life of a hopelessly bankrupt debtor?    In that case, how does the hopeless prospect of payment by the debtor protect society against the keen interest which the creditor would have in the death of the debtor?    Yet we find no case holding such a policy void.    So what pecuniary interest has the wife in the life of a husband incapable of supporting her, or the husband in the life of a wife incapable of rendering service?    Yet we find no case holding such a policy void.    Indeed, there is much fiction in reference to the supposed

8—51

necessity of a pecuniary insurable interest to support a life insurance policy, when a near relative insures for the benefit of another. Close ties of blood or affinity, as parent, child, brother, sister, husband, wife, with the natural affection and moral forces which generally prompt one such to serve and protect the other, rendering it highly improbable that none for money would take the life of the other, afford a surer guarantee to society against the dangers of betting on the duration of human life, than any mere pecuniary interest in the life insured, often more imaginary than real. The insurance companies, wiser than the courts in the matter of "risks," since it is their special business to bet on the long duration of the insured life, know this very well. They often provide in the contract, as in the contract before us, that the whole amount of the policy may be collected by the assignee, if such assignee "bear to the insured the relationship of wife, child, parent, brother or sister;" any assignee not so related to the insured being limited in his recovery to the value of the interest proven.

The authorities are conflicting, but we think the weight of opinion supports the view of this Court, that a son has an insurable interest in the life of his mother, on account of relationship alone, which will sustain an assignment by the beneficiary to him of a policy procured by the mother on her own life for the benefit of a daughter. Against this view is cited *Guardian Mut. Life Ins. Co.* v. *Hogan*, 80 Ill., 35; 22 Am. Rep., 180. In this case the father was infirm, unable to labor, engaged in no business, about sixty years old, with an estate of $13,000, having provided by will for a legacy of $1,000 to his son. This son procured the insurance of $10,000 on his father's life, paying the premiums therefor, was forty years old, not dependent on the father, and living at a distance in another county with his own family, and on his own farm of 300 or 400 acres. All that this case can fairly be said to hold in this regard is that the mere relationship of father and son, where both parties are of mature years and live apart in independent

pecuniary circumstances, and mutually entirely independ-
ent of each other, and having no business relations with
each other, does not create an insurable interest in the son
on the life of the father.    In the question now before us,
the fact of relationship is the only fact that appears bear-
ing on the question of insurable interest.    Even if the fact
of such relationship merely _tends_ to show an insurable in-
terest, the demurrer could not have been sustained.    It
will be noted, also, that in Hogan's case, _supra_, the son
procured the policy on the father's life for the son's benefit,
and in this case the mother procured the policy on her own
life.   In Illinois the beneficiary of a policy procured by one
on his own life need not have an insurable interest in that
life.    _Bloomington Mutual, &c., Association_ v. _Blue_, 120
Ill., 121; 60 Am. Rep., 558; 53 Am. Rep., 852.    The case
next cited is _Continental Life Ins. Co._ v. _Volger_, 89 Ind.,
572; 46 Am. Rep., 185; in which the head note is, "A
daughter has not necessarily an insurable interest in her
mother's life."    This was a case in which the daughter
procured the insurance on her mother's life for her own
benefit.   It was decided, on demurrer to the complaint, that
in such a case it was necessary to allege an insurable in-
terest in the life insured, and that the mere allegation of
the relationship was insufficient.    The difference between
Volger's case, _supra_, and this case is no where better un-
derstood than in Indiana, where the Court, in _Ins. Co._ v.
_Baum_, 29 Ind., 236, reaffirmed in _Association_ v. _Houghton_,
103 Ind., 286, 53 Am. Rep., 514, held that where a policy
is procured by one on his own life, for the benefit of an-
other, in a suit by the beneficiary, it is not necessary to
aver an insurable interest.    In the case of _Asso._ v. _Baum_,
_supra_, a grand-father insured his life for the benefit of his
grand-son, with whom he lived, and the policy was held
valid.    _Gambs_ v. _Covenant etc. Ins. Co._, 50 Mo., 44, is also
cited.    The rule in Missouri is, that the insurable interest
must be _direct_ and _pecuniary;_ hence a person has not such
an interest in the wife or child by the mere relationship.

Bacon, sec. 250. Under our ruling, an insurable interest in the "life" need not be direct and pecuniary. On the other hand, in support of the view of this Court, may be cited *Equitable Life Ins. Co.* v. *Hazlewood*, 75 Texas, 338, 16 Am. St. Rep., 905, which holds that brothers and sisters have an insurable interest in the life of each other on account of relationship alone. In the early case of *Lord* v. *Dall*, 12 Mass., 115, 7 Am. Dec., 38, a single woman, whom the brother had for several years supported and educated, standing in *loco parentis* to her, was held to have an insurable interest in the brother's life. In this case, the brother was under no legal obligation to support the sister, and all her reasonable anticipation of advantage from his life rested in his brotherly affection for her. We have already referred to the case of *Ætna Ins. Co.* v. *France*, *supra*. If brothers and sisters have reciprocally an insurable interest in each other's life, *a priori* a son has an insurable interest in his mother's life. In *Bursinger* v. *Bank of Watertown*, 67 Wis., 75, *supra*, an assignment by a son of an insurance policy on his own life, as security for a debt due by his father to the assignee, was sustained, on the ground, among others, that the son has an insurable interest in the father's life and the father in the son's. In *Reserve Mutual Ins. Co.* v. *Kane*, 81 Penn. St., 154, 22 Am. Rep., 741, it was held that a son has an insurable interest in the life of his father, especially where the son is liable under the poor law for the support of his father. Even if it be doubtful on reason and authority whether a son or daughter, by the fact of relationship alone, has an insurable interest in the life of a mother, still that is not a sufficient reason to declare void the contract of insurance or its assignment on grounds of public policy. A sound public policy requires the enforcement of contracts deliberately made, which do not clearly contravene some positive law or rule of public morals. It is surely not a sound policy to permit insurers to contract to insure the lives of persons, receive premiums therefor as long as the insured, the beneficiary or the as-

signee, will continue to pay, and then, when the time comes for the insurers to pay what they agreed to pay, allow them to escape their contract on the ground of want of insurable interest in the life insured, unless it clearly appears that such contracts are pernicious and dangerous to society. Courts should not annul contracts on doubtful grounds of public policy. In such matters it is better that the legislature should first speak.

2. The motion for nonsuit was made on the same grounds, want of insurable interest of the daughter or son in the life of the mother, and, for reasons already given, we find no error in the refusal of the motion. The evidence tended to establish the allegations of the complaint. The evidence showed that the application for insurance was signed by the insured. In the application, in answer to the printed question, "Who will make payments?" the name "A. E. H. Cranford" was given. A. E. H. Cranford was the husband of the beneficiary, Mary E. Cranford. It appeared that Mrs. Crosswell and her daughter and son lived in the same community of Eastover at the time of the taking out of the policy and the assignment, but nothing was shown as to the ages of the son and daughter, whether the mother and children lived together or not, or whether they were in any way mutually helpful to or dependent on each other. The evidence tended to show that the mother, the insured, paid the first premium on the delivery of the policy, and that afterwards the mother and sister asked the plaintiff to take the policy and keep up the premiums, and that the plaintiff paid all subsequent premiums, taking an assignment of the policy from the mother and sister on the 21st day of January, 1895, not quite two years after the date of the policy, April 15, 1893. The assignment, or a copy thereof, was filed with the defendant company January 23, 1895, which was acknowledged by the company. Defendant, thinking a new policy should be made out to him, wrote again to the company asking about it, to which the company replied, March 8th, 1895: "It is not necessary that a new policy be

made out. The assignment blank is all that is needed. Trusting this information may be satisfactory," &c. The insured died January 7, 1896. In response to request from the attorney for plaintiff for · blanks for proof of death, the company wrote signifying their determination not to pay the policy, the only ground of refusal being material misrepresentations in the application for insurance. It is manifest the motion for nonsuit could not be sustained.

3. There was no error in permitting the plaintiff to testify to payment by him of premiums on the policy prior to its assignment. If evidence of payment of premiums prior to the assignment was not relevant, it certainly did not prejudice the defendant. But it was proper for plaintiff to show that all premiums had been paid as required by the policy. Moreover, although that circumstance was not alluded to in argument, the proof that plaintiff paid the premium due in April, 1894, before the assignment, was some evidence tending to show that plaintiff paid this at the request of the insured, and, therefore, to that extent was a creditor of the insured at the time of the assignment.

4. The fourth and fifth exceptions, substantially stated, complain that the Circuit Judge erred in charging the jury that "the contract sued on here, and the allegation of the complaint is, that Mrs. Crosswell insured herself for the benefit of Mrs. Cranford, her daughter," first, because the complaint did not so allege, and, second, because he thus invaded the province of the jury. There was not a particle of evidence tending to show that any one else than Mrs. Crosswell procured the policy of insurance. Mrs. Crosswell's answer to the question, "Who will make payments?" designating her son-in-law, the husband of the beneficiary, in the absence of any explanation, must be construed as designating a person through whom she would make payment. The designated person was not a party to the contract, and in no way bound to pay the premiums. The construction of the contract of insurance was wholly for the Court, and not at all for the jury, and the Court's

construction of the contract was correct, as shown in the discussion of the demurrer. The complaint alleged substantially as stated by the Court.

5. The charge of the Judge, complained of in the sixth ground of appeal, is as follows: "As I take it, here is the rule: that a person may insure his own life for the benefit of another unless that contract is a guise, mistake or contract for the purpose of defrauding—if it is a *bona fide* contract, every person honest about it, I have the right to insure my life for the benefit of somebody else. If that be so, the interest that the beneficiary could take in it, he could assign that interest subject to the same limitation as provided for and conditioned on in that contract. That is what that contract means. If that be so, and you find that the plaintiff here was the assignee of the beneficiary of that contract, and that contract was of the nature I have indicated, that the assignment was made, and properly made, and the risk contemplated there, to wit: the death of Mrs. Crosswell, occurred, then the transferee would have the same right to recover upon that contract that the transferrer would have." It is objected to this charge, (1) that it assumes that Mrs. Crosswell took out the policy on her own life; (2) that it is erroneous, because the beneficiary must have an insurable interest in the life insured; (3) that it ignores the fifth printed condition of the policy; (4) that it asserted the right of the beneficiary to assign the policy to one without an insurable interest in the insured. The 1st, 2d, and 4th objections to the charge have already been considered. The charge must be considered in the light of the undisputed fact that the beneficiary was the daughter and the assignee was the son of the insured. So considered, the charge was substantially in accord with the principles hereinabove announced. The Judge did not ignore the fifth printed condition of the policy, for he expressly charged that the beneficiary could assign her interest, "subject to the same limitation as provided for and conditioned on in that contract."

6. The seventh exception is partly founded on a miscon-

ception of the Judge's charge, and need not be further noticed. So much of this ground of appeal as relates to the failure of the Judge to charge a certain matter in reference to the question of waiver, is overruled, since, as we have repeatedly held, a failure to charge a specific proposition of law, is not reversible error, in the absence of a request so to charge.

7. The Circuit Judge refused certain requests to charge as not applicable to the case. The first request to charge was as follows: "1. To recover on a policy of life insurance, the assured must prove an insurable interest in the life insured." This charge without explanation or qualification would have been misleading, and as framed was not applicable to the case. In this case, as previously shown, Mrs. Crosswell procured the policy of insurance on her own life, and had the right to make it payable to whomsoever she pleased, even though the beneficiary had no insurable interest in her life, Mrs. Crosswell's interest in her own life supporting the policy.

The second request to charge was as follows: "2. An insurable interest necessary to support a life policy is the existence of some pecuniary or other benefit or advantage, or some reasonable ground to expect the same, from the continuance of the life insured, which would be injured or terminated by the death." This request was likewise inapplicable to this case without explanation that the interest one has in his own life would support a policy procured by him.

The third request was as follows: "3. The relation of parent and child is not of itself sufficient to give a child an insurable interest in the life of a parent." In view of the principles already announced, it was not error to refuse this request. The relation is parent and child; that fact alone appearing, as in this case, is sufficient to support an inference of insurable interest of the child in the parent.

The fourth request was as follows: "4. In order for the plaintiff to recover on the policy sued on, he must prove to the satisfaction of the jury that at the time of the issue of

the policy, Mary E. Cranford had some pecuniary or other benefit or advantage, or some reasonable ground to expect the same, from the continuance of the life of her mother, which would be injured or lost by her death; and if the plaintiff fails to present such proof, they must find for the defendant." We have shown (1) that the beneficiary in a policy procured by one on his own life need not have an insurable interest in the life of the insured; (2) that a daughter has an insurable interest in the life of her mother, nothing more than the fact of relationship appearing. Hence there was no error in refusing this request.

The fifth request to charge was as follows: "5. In order for the plaintiff to recover on the policy sued on, he must prove to the satisfaction of the jury that at the time of the assignment of the policy to him he had some pecuniary or other benefit or advantage, or some reasonable ground to expect the same, in the continuance of the life of his mother, which would be injured or lost by her death; and if the plaintiff fails to so prove, they must find for the defendant." Since the mere fact of relationship was sufficient to warrant a presumption of insurable interest of the son in his mother, it would have been error to have charged as requested. Such a charge would be to assert that plaintiff could not recover on proof of the relationship alone.

The judgment of the Circuit Court is affirmed.