13915

HACK v. METZ *ET AL.*

(176 S. E., 314)

*Messrs. Haynsworth & Haynsworth,* for appellant,

*Messrs. Price and Poag,* for respondent,

October 2, 1934.

The opinion of the Court was delivered by ·MR. JUSTICE BONHAM.

June 12, 1922, the Commonwealth Life Insurance Company (which we shall in this opinion speak of as the company), issued its policy contract whereby it insured the life of James C. Metz, an infant of the age of one year, in the sum of $250.00, with Frances B. Metz, mother of the infant, as beneficiary.

C. S. Bowen, N. A. Hack and A. S. Thomas were engaged as partners in the business of buying up industrial policies of life insurance which had, or would soon have, a cash surrender value, and cash them in if the company assented. The business was conducted in the name of C. S. Bowen, attorney. The premiums on the policy on the life of the infant James C. Metz were paid by his father, R. L. Metz, until April 30, 1932, on which day R. L. Metz and Frances B. Metz, the beneficiary named in the policy, executed and delivered to C. S. Bowen a paper purporting to be a power of attorney and executory agreement by which, in consideration of the sum of $20.00, the policy was assigned and delivered to C. S. Bowen. Hack and Thomas were interested with Bowen in the transaction. R. L. Metz and Frances B. Metz assert that they understood that by this transaction they were securing a loan from Bowen of $20-.00; that Bowen was to pay $1.36 additional premiums to convert the policy into a ten-year paid-up policy; that the loan of $20.00 and the additional premiums were secured by the pledge of the policy. Bowen claims that he bought the policy outright for himself, Hack and Thomas, and expected to cash it in on June 12, 1932. None of these men had an insurable interest in the life of the insured infant. Subsequently, when Bowen discovered that the policy could not

be cashed until the insured reached the age of fifteen years, he sold his interest in the assignment of the policy to Hack, as did Thomas, and a new power of attorney and executory agreement was executed by R. L. and Frances Metz in favor of Hack.

November 12, 1932, the insured was killed in an automobile accident. He was then eleven years of age. Hack, who had at one time been an agent of the company, procured the necessary blanks for proof of death and claim, which were made out in the name of and signed by Frances B. Metz, as claimant. In due time a check payable to Frances B. Metz for the face of the policy was sent to the agent of the company at Greenville for delivery to Frances B. Metz upon surrender of the policy. The parties met at the Metz home. As Hack had the policy and Mrs. Metz refused to sign the check to Hack, the policy was not surrendered to the agent, who refused to deliver the check to either Hack or Mrs. Metz, and sent it back to the company. Thereupon Hack brought this action to recover the amount of the death benefits of the policy, to wit, $250.00.

The case was tried by Judge Ramage and a jury with the result of a verdict for plaintiff in the amount claimed.

A motion for new trial was refused and this appeal followed.

It appears from the record, as admitted facts, that Bowen, Hack and Thomas had brought some three hundred policies of like nature of that involved in this transaction. Mr. Bowen said on cross examination:

"I knew I was purchasing a policy on the life of a minor whom I had never seen and in whom I had no interest at all. I had extended into the purchase of policies until it had developed into a business. I was speculating, incidentally, the speculative feature was incidental; I bought principally for the cash surrender value which was definite and certain, if I were to have any interest in it at all I wanted the whole thing. * * * I also took into consideration that the child

might die when I purchased the policy, I paid the Metz for that."

The policy contains this provision:

"*Change Of Beneficiary*. The insured may at any time during the continuance of the policy, provided it be not then assigned, change the beneficiary or the beneficiaries, by written request on the Company's form, which must be sent to the Company at the home office, accompanied by this policy, such change to take effect when so endorsed on the policy by the Company."

It is conceded that no written request of the insured for change of beneficiary was ever made, as required by the above provision of the policy, hence no consent to the change was ever indorsed on the policy by the company. The company claims that it had no knowledge of the assignment.

The complaint alleged the issuance of the policy; the assignment thereof by Frances B. Metz to plaintiff; the death of the insured; the refusal of Frances B. Metz to co-operate with plaintiff as she had contracted to do, in collecting the insurance, by refusing to indorse the check for the death benefit which had been made payable to her, which caused the company to retain the check; that notice of the assignment had been given to the agent of the company and it became the duty of the company to pay to the plaintiff the benefits due under the policy, which it refused to do. The prayer was for the sum of $250.00 and interest.

The action was originally brought against Mrs. Metz, and B. T. and J. E. Leppard. The two last named were eliminated at the trial, and Mrs. Metz has not appealed, therefore, we are concerned only with the answer of the company. This sets up that it was willing to deliver the check for the death claim to the named beneficiary upon surrender of the policy; that it never assented to the change of beneficiary, nor to the assignment of the policy; that the plaintiff has no insurable interest in the life of James C. Metz; and that the transaction is a wagering contract, which is unconscion-

able, speculative, is against good morals and public policy, and is in the nature of a gambling contract on the life of a person in whom plaintiff has no insurable interest; that the company is ready and willing to pay the face of the policy to Frances B. Metz upon the surrender and receipt of the policy and the execution of a proper release.

It is needless to recite in detail the issues made by the several exceptions. The questions presented by them for determination by this Court are these:

Has the plaintiff an insurable interest in the life of James C. Metz by reason of the assignment of the policy to him which entitles him to maintain this action?

Is the company estopped by the incontestable clause of the policy from contesting liability?

Has the company waived its right to contest liability to the plaintiff?

Is the transaction by which plaintiff acquired the assignment of the policy from the beneficiary a wagering contract, speculative in its nature, which is against good morals and public policy?

Certain specific challenges of the charge.

It is not claimed on behalf of plaintiff that he had originally an insurable interest in the life of James C. Metz, but it is claimed that Frances B. Metz has such an interest, and as to her the contract of insurance was valid, and that the assignment by her to plaintiff was valid because it carried all of her rights under the policy.

It is said in Joyce on Insurance (2d Ed.), § 872, that: "A person can have no insurable interest where his only right arises under a contract which he had no authority to make."

From the same authority, § 2905D, we quote: "It has been broadly stated that insurance taken out on the life of another, without the latter's consent is against public policy and void."

The exception to the rule, to wit, that a parent may insure the life of his infant child for the parent's benefit, is

recognized in most jurisdictions, including this, although it is denied, or governed by statute, in others. It is patent then that the policy on the life of James C. Metz in favor of his mother is valid. It is equally plain that a policy on the life of the infant, James C. Metz, in favor of the plaintiff N. A. Hack, who is in nowise related to James C. Metz, and has no insurable interest in his life, would be invalid.

Can the assignment by the mother of James C. Metz, who is the beneficiary named in the policy in this case, convey to plaintiff an interest which will enable him to collect the policy on the death of the insured?

What is the nature of the interest of Frances B. Metz in this policy?

The policy contains a provision that the insured may change the beneficiary when he pleases, if he does so in the manner prescribed by the terms of the policy.

It has been repeatedly held that the beneficiary in such policy as this has only a contingent interest, the assignment of which, *without the consent of the insured,* carries no interest to the assignee; and it has been held that an assignment of the policy is a change or an attempt to change the beneficiary.

"The case last named [*Barron v. Ins. Co.,* 131 S. C., 441, 128 S. E., 414], is in exact parallel with the case at bar, and it is there held that the assignment was in effect a change of the beneficiary, what our Court practically held in the *Deal case* [87 S. C., 395, 69 S. E., 886, Ann. Cas., 1912-B, 1142]." *Antley v. N. Y. Life Ins. Co.,* 139 S. C., 23, 137 S. E., 199, 202, 60 A. L. R., 184.

In the *Antley case* it is distinctly held that: "Where the right to change beneficiary in a policy of life insurance, named beneficiary obtains merely an inchoate right *dependent entirely upon the will of the insured during* his lifetime." Citing numerous authorities.

"Where policy reserved right to change beneficiary, person designated as beneficiary held to have no vested right. * * *" *Id.*

In the case of *Bost v. Volunteer State Life Insurance Co.,* 114 S. C., 405, 163 S. E., 771, 772, the policy contained a provision for the change of beneficiary identical with that contained in the policy which we are considering. There Mr. Justice Watts (afterwards Chief Justice), said: "By the terms of the policies the insured reserved the right to change the beneficiary, without the beneficiary's consent, and under this provision the beneficiary acquired, not a vested interest during the life of the insured, but only an expectancy. That expectancy could be defeated at any time during the life of the insured, by the insured complying with the provisions of the policy, in the manner provided for in the policy, whereby change of beneficiary could be made."

In the case of *Crosswell v. Connecticut Indemnity Association,* 51 S. C., 105, 109, 28 S. E., 200, 202, the Court said: "We think both reason and authority sustain our conclusion that a life policy of insurance, valid in its inception, may be assigned to one having no insurable interest in the life insured, *with the consent of the 'life'* (we interpolate, the person insured), *and the insurer, if the assignment is bona fide, and not a device to evade the law against wager policies."*

It is the necessary deduction from this declaration that if the assignment be not made with the consent of the "life" and the insurer, it is void.

In the case of *Wannamaker v. Stroman et al.,* 167 S. C., 484, 166 S. E., 621, 624, the insured had three policies on his life, in each of which his wife was the named beneficiary. In policies A and B the right was reserved to the insured to change the beneficiary, in the manner prescribed in the policies. In policy C there was no reservation to the insured to change the beneficiary. The insured attempted by his will to dispose of the proceeds of all of the policies as if they were assets of his estate. In disposing of the litigation which ensued upon the death of the insured, the writer of the prevailing opinion said:

"My conclusion is that the insured had no right to divert the proceeds of policies A and B from Mrs. Stroman, as his will did not evince a disposition to change the beneficiary in these policies, and that, if it did, it did not conform to the regulation in the policies as to a change of the beneficiary; that he had no right to interfere with the right of Mrs. Stroman to receive the proceeds of policy C."

This last-named policy is that in which there was no reservation to the insured of the right to change the beneficiary, and in which, therefore, Mrs. Stroman had a vested interest.

The following is taken from the case of *Antley v. N. Y. Life Ins. Co., supra:*

"In *Rattray v. Banks,* 31 Ga. App., 589, 121 S. E., 516, the Court said:

" 'A beneficiary in a life insurance policy, where the insured has reserved the right to change the beneficiary, has no vested interest, and an assignment of the policy by the insured to a creditor, for the purpose of securing an indebtedness of the insured which is less than the face value of the policy, amounts to a change of beneficiary *pro tanto.' "*

These authorities from our Court are sufficient to sustain our conclusion that the assignment in this present case is invalid, for the reason that in its inception the plaintiff had no insurable interest in the insured; and the beneficiary had only an expectancy therein, and the assignment, being in effect a change of beneficiary, could be effected only in the manner prescribed by the policy in the clause which reserves to the insured the right to change the beneficiary. A valid assignment in such case is dependent upon the will of the insured. In the present case it is urged that the insured, being a minor, cannot consent; that the law which recognizes the right of the parent to procure insurance on the life of his child will not take from the parent the right to enjoy the benefits of the policy which accrue to him during the life of the child. It may be said that the law is more interested in the

safety of the child than in the enjoyment of the parent of his rights under the policy. The Court of equity was open to the beneficiary in this case if the proposed assignment was a *bona fide* transaction and not a speculative and wagering one. The Court, upon a proper showing, by one duly appointed to represent the infant insured, that the transaction was valid and beneficial to the insured, would have authorized the assignment.

It is contended that the contract of insurance provides that if the insured be under fourteen years of age, the request for change of beneficiary may be signed by both parents, or duly appointed guardian. No such signed request was ever presented to the company. The parents attempted of their own volition to make such change. No request of any sort was ever presented to the company as required by the terms of the policy.

Something was said in argument to the effect that the company is estopped to deny liability by the incontestable clause of the policy. The sufficient answer is that the company admits liability and willingness to pay to the person who is held to be entitled to payment.

Is this transaction a wagering contract, speculative in its nature, obnoxious to social order and good morals, and against public policy?

That a contract of such nature is void, is thoroughly well established.

As hereinabove shown from the record, this is one of some three hundred transactions in which plaintiff and his associates were engaged, by which they bought up policies, and speculated upon the amount of profit they could make by taking the cash surrender value of the policies when they matured to that extent. They also speculated on the chance that the insured might die and they would collect the face of the policy. So much is admitted by the member of the partnership who handled the purchasing of the policies.

In the present case the insured was an infant in whose life the purchasers of the policy had no insurable interest. The

law is especially careful to protect such helpless ones from the cupidity of parents or the speculative interests of others.

. In the case of *Crosswell v. Connecticut Indemnity Association*, 51 S. C., 110, 28 S. E., 200, 203, discussing the question of insurable interest, the Court, quoting from *Warnock v. Davis*, 104 U. S., 775, 26 L. Ed., 924, said:

"It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation, for a parent has an insurable interest in the life of his child, and a child in the life of his parent, a husband in the life of his wife, and a wife in the life of her husband. *The natural affection in cases of this kind is considered as more powerful, as operating more efficaciously, to protect the life of the insured, than any other consideration.* But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, *to expect some benefit or advantage from the continuance of the life of the assured.*" (Italics added.)

In the case of *Steinback v. Diepenbrock et al.*, reported in 158 N. Y., 24, 52 N. E., 662, 663, 44 L. R. A., 417, 70 Am. St. Rep., 424, Judge Parker, delivering the opinion of the Court of Appeals of the State of New York, made the following announcement which was sustained by the citation of many authorities from other jurisdictions:

"These authorities are, it seems to us, well grounded in principle. They recognize not only the existence of, but the necessity for, the rule that forbids any insurance upon the life of a person in which the person for whose benefit the insurance is made has no interest. Such a policy constitutes what is termed a 'wager policy,' or a mere speculative contract upon the life of the insured, with a direct interest in favor of its early termination. It is, in terms, forbidden by statute in England (14 Geo. III, c., 48), and in many other jurisdictions, including this State (Laws 1892, c., 690, § 55); and this Court held in *Ruse v. Mutual Ben. Life Ins. Co.*, 23 N. Y., 516, that such insurance is void at common

law, and that the English statute, in so far as it prohibits such insurance, is merely a declaratory act."

The basis for holding such contracts of insurance to be against public policy is grounded upon the law prohibiting wagering contracts. This is treated in our own case of *Crosswell v. Connecticut Indemnity Association*, 51 S. C., 103, 28 S. E., 200, 201. Quoting further from the *Crosswell case*, we find the following: "There seems to be a clear distinction between cases in which the policy is procured by the insured *bona fide* of his own motion and cases in which it is procured by another. It is a very different thing to allow a man to create voluntarily an interest in his termination and to allow some one else to do so at their will."

This principle operates with especial emphasis in the case of an infant incapable of understanding the transaction and incapable of consenting thereto, and in which the policy becomes an asset of the beneficiary to be sold as a chattel to a stranger who has no interest whatever in the prolongation or protection of the life of the child.

In the case of *Finnie v. Walker* (C. C. A.), 257 F., 698, 700, 5 A. L. R., 831, Circuit Judge Manton delivered the opinion in which he said, *inter alia:*

"These policies were issued to the estate of the intestate and the salutary rule of public policy which condemns *wagering assignments,* forbids the appellees retaining the moneys they received, other than the premiums paid by them. \* \* \* *The assignment was contemporaneous with the issuance of the policy, and the facts disclosed in this record permit a fair inference that it was the intent of the appellees to obtain just such a result as the issuance of a wagering contract of insurance permits.* \* \* \* *If, from these facts, the wagering intent may be presumed, as it must, that avoids the assignment. Any contract, the tendency of which is to endanger the public interest and affect the public good, and which is subversive of sound morality, ought never to receive the sanction of a Court of equity or be the foundation for its judgment.*" (Italics added.)

In the annotation to the case of *Martin v. McAllister,* a Texas case reported in 56 L. R. A., 585, it is said:

"It seems that if insurance can be taken on lives of infants the question of their consent is not material. The tendency of Courts in regard to such insurance is restrictive, to prevent jeopardizing the lives of children by taking insurance thereon, as, by the desire to secure the insurance if of much value, the temptation would be to neglect the health of the insured, or to shorten the life. In such cases as have sustained the policy, the beneficiary is held strictly to the rule that he must establish an insurable interest, but they have not expressly considered the question of consent." Citing authorities.

In the same annotation from the case of *Prudential Ins. Co. v. Jenkins,* 15 Ind. App., 297, 43 N. E., 1056, 57 Am. St. Rep., 228, the Court said:

"The insurance of children who are helpless and under the control and authority of others is susceptible of such possibilities of evil that it should not be encouraged, and the evidence ought to establish an insurable interest most clearly and satisfactorily before a verdict should meet the approval of a trial Court."

In the present case the plaintiff has no insurable interest in the life of the insured, but he claims that he has acquired such interest under an assignment of the beneficiary which contravenes every provision of the policy governing such assignments, and every rule of law thereabout.

Manifestly, it would be against the interest of social order, the rule of good morals, and public policy to uphold a claim founded upon such premises.

The respondent contends that inasmuch as the company received and retained the $1.36 of premiums on the policy which were paid to its agent by Mr. Bowen when he bought the policy, that the company has waived the right to dispute the legality of the assignment and is now estopped to deny liability thereon. It appears from the record

that the $1.36 was paid to the agent of the company by check which was deposited by him with other checks and funds paid him for premiums, and the aggregate sum was paid by him to the company by the check of the agent. There is absolutely no evidence that the company had any knowledge of the assignment by Frances B. Metz to N. A. Hack. On the other hand, there is the positive testimony of officers of the company that it had no knowledge of the assignment until this controversy arose. The case is in strict analogy with the case of *Perry v. Sovereign Camp, W. O. W.*, 172 S. C., 456, 174 S. E., 397.

Perry, member of a local camp, died while in arrears for the dues of the month preceding his death, and after the expiration of the thirty days of grace, in which, by the payment of his dues, he would have been automatically reinstated. The day of his death, and after that event, his family sent the amount of his dues to the clerk of the local camp, who forwarded them to the Sovereign Camp without informing the latter that Perry was suspended when he died for nonpayment of his dues. It was argued, as here, that the receipt and retention of the dues thus paid worked a waiver and estoppel against the Sovereign Camp. It was held that:

"Fraternal insurance organization, in order to waive or be estopped to assert rules applicable to payment of dues and suspensions, must be shown to have had knowledge of facts on which waiver or estoppel is founded."

Moreover, it may not be successfully contended that the doctrine of waiver or estoppel may be invoked to make valid, and impart enforceability to a contract which is obnoxious as a wagering and speculative one, and invalid, and unenforceable because it is against good morals and public policy. Further, the company does not deny liability, but asserts its willingness to pay the proper person.

The Circuit Judge was requested by the appellant to charge the jury "that the insured, James C. Metz, being a minor, could not make a valid assignment of the policy, and

there is no evidence in this case that he ever made an assignment of the policy your verdict should be for the defendant."

There is no dispute of the fact that James C. Metz █ was a minor, and there can·be no denial of the legal proposition that he could not make a valid assignment of the policy, and, as there is no gainsaying that there is in this record no evidence that he ever made, or attempted to make an assignment of the policy, the request was a proper one and it was error to refuse to give it. The exception is sustained.

At the request of respondent, the Circuit Judge █ charged the jury "that an insurance company may estop itself to rely upon a provision in its policy.against assignment by any act on its part done with knowledge of such assignment, which recognizes the assignment and that acceptance of premiums on the policy from the assignee may be sufficient to create such an estoppel except in case of fraud."

The exception is well taken and is sustained. The charge, as framed, amounted to the statement by the Court that the company had accepted premiums from the assignee with knowledge of the assignment. It was for the jury to determine whether that had been done.

Moreover, as was said heretofore in this opinion when considering the question of waiver, the doctrine of estoppel may not be invoked to give legality to a wagering and speculative contract which is illegal and unenforceable by the Courts because it is contrary to good morals and against public policy.

The rule is thus stated in 10 R. C. L., § 112, 801:

"It is generally considered that as between the parties to a contract validity cannot be given to it by estoppel if it is prohibited by law *or is against public policy.* * * * Manifestly, the reason underlying the limitation on the doctrine of estoppel, presently under discussion, is that where the

matter of illegality arises, the matter ceases to be one solely between the parties, or between private individuals." (Italics added.)

The other exceptions are practically disposed of by the body of this opinion.

The respondent contends in argument that as Frances B. Metz has been eliminated from the case by the verdict and judgment from which she has not appealed, the respondent, as the only other claimant, is entitled to the proceeds of the policy. This Court is not now concerned with the rights of Mrs. Frances B. Metz in this controversy. The only question submitted to us is, Is the plaintiff, N. A. Hack, entitled by reason of his atttmpted assignment from Mrs. Frances B. Metz to the proceeds of the policy? To this question we answer, No.

The judgment below is reversed, and the case is remanded to the Circuit Court with directions to enter judgment for the appellant, Commonwealth Life Insurance Company, against the respondent, N. A. Hack.

MR. CHIEF JUSTICE BLEASE, MR. JUSTICE CARTER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.

MR. JUSTICE STABLER: I concur in the result of the opinion of Mr. Justice Bonham, on the ground that the assignment made, in effect a change of beneficiary, was invalid, for the reason, as stated by him, that in its inception the plaintiff had no insurable interest in the life of the insured; and that in such case the legality of the assignment is dependent upon the will of the insured, who, in the present case, was a minor and could not consent. If the beneficiary, in such circumstances, desired to assign her expectancy or interest, she should have made application to a Court of equity, as pointed out in the opinion.