16341

ELLISON v. INDEPENDENT LIFE & ACCIDENT INS. CO.

(58 S. E. (2d) 890)

*Messrs. Mann & Arnold,* of Greenville, *for Appellant,*

*Mr. Oscar H. Doyle,* of Anderson, *for Respondent,* 

April 13, 1950.

STUKES, Justice.

Plaintiff operates a retail store in Belton. Roy Gregory, now deceased, was mayor and occupied the city hall which was next-door to plaintiff's store. For many years Gregory had been an insurance agent and was the general agent in Belton for Life Insurance Company of Virginia. Although only forty-eight years old he suffered a heart attack several years before the transaction under review and was retired from his former employment. He continued to serve as mayor.

He was in plaintiff's store on Oct. 4, 1948, in social conversation with plaintiff and with defendant's agent, Hammond. There were also present plaintiff's clerk, one Watkins, and Lawrence Ellison, of the same surname but no relation, who was agent at Belton for another life insurance company. The subject of insurance was broached and the testimony thereabout of defendant's agent Hammond will be first summarized. He entered the store he said to purchase a soft drink

and found plaintiff talking to Ellison who Hammond understood was trying to sell plaintiff a policy. Gregory asked Hammond if he could write a policy for him whereupon Hammond inquired his age, quoted the weekly premium and filed an application. Upon inquiry as to beneficiary, Gregory first mentioned his wife and plaintiff interjected that he should be the beneficiary, to which Gregory agreed and the application was so written. Under instruction from plaintiff his clerk, Watkins, took cash from the money-drawer of the store and paid Hammond the amount of the first premium, $16.92, which it turned out was a few cents too much in view of the applicable discount for advance payment of the weekly premiums. Hammond testified further that he asked Gregory the condition of his health and the reply was, "I am in as good health as the average man of forty-eight." The insured inquired whether the premium would be refunded to plaintiff if policy were not issued, and he was so assured by the witness. He procured the issuance of the policy from defendant's Anderson office and delivered it to plaintiff or his clerk, Watkins, for him. After the death of the insured the witness, accompanied by another agent of defendant, tendered refund of the amount of the premium to plaintiff who declined it. The policy did not require a medical examination. The witness had obtained his municipal license as an agent from the insured on the preceding May 3rd but did not know that he was a retired insurance agent and he afterward saw him only infrequently and did not know that he was drawing disability and did not hear him say that at the time of the application. The insured asked the witness to write the insurance and no questions were asked for the purpose of filling the application except whether the insured was in good health to which he replied as stated above.

Lawrence Ellison testified that when he entered the store upon this occasion plaintiff and his clerk were present, as were the insured and Hammond, all of whom were talking insurance. The insured inquired of the witness whether he

could write him a policy and the witness replied in the negative. Hammond interposed with quotation of the premium rate of his company, the defendant, and the insured said to him, "Son, do you know I am drawing disability?" Hammond said, "Well, you run the mayor's job. That's a job." The witness is a life-long resident of Belton, knew the insured as mayor and knew that he was not in sound health and he heard the insured tell Hammond that he, the insured, was "drawing disability."

Plaintiff's clerk, Watkins, testified that the insured first came in the store, sat down and talked with the witness and his employer, plaintiff, and when one of the insurance agents came in they talked about insurance and the insured asked agent Ellison the amount of premium per thousand and agent Ellison replied, "There is no use of my telling you, I can't write you." Then agent Hammond said, upon inquiry by the insured, that he could furnish a thousand-dollar policy. The witness thought that the insured mentioned disability to the agent Hammond. The witness paid the premium and charged the amount, $17.40 (*sic*), to the account of the insured who was also charged on the same day with groceries.

Plaintiff testified that he had known the insured for six or seven years and they were good friends and hunted and fished together. He extended credit to the insured who settled irregularly in cash. The insured was visiting him in his store on Oct. 4, 1948, for probably thirty minutes when agents Hammond and Ellison came in whereupon plaintiff suggested to them that they might do some business by writing each other a policy. The insured said, "Write me a policy." Agent Ellison replied, "I can't write you one," but Hammond said, "I can write you a policy," to which the insured replied, "Give me all you can give me," and Hammond began to fill a blank whereupon the insured said, "No, you can't give me insurance. I am drawing disability." Hammond said, "Let me try a shot on you. I think I can get your policy

through." The insured signed application and requested plaintiff to pay the premium which the clerk did upon his instruction and the amount was charged to the insured on plaintiff's books. Plaintiff did not know before that the insured was "drawing a pension" and did not know that he was not in good health. The witness heard the insured tell Hammond on this occasion that he was drawing disability which was the first information the witness had of it.

Medical witnesses for the defendant testified that the insured suffered from a serious heart ailment in September, 1945, when he was District Manager in Belton for the Life Insurance Company of Virginia. He improved but was never cured and also suffered from hardening of the arteries and disease of the gall bladder, from all of which he was not, in their opinions, an insurable risk. The local doctor who was called at the time of the insured's death (after a fall in the bathroom) was of opinion that death resulted from cerebral hemorrhage which was unconnected with heart trouble. He also testified to the good reputation of plaintiff and the insured for honesty and integrity.

The application, which was filled by defendant's soliciting agent, Hammond, answered "yes" to the question whether the applicant was then in good health and "no" to the questions whether he had been sick in the past year, whether he had consulted a physician in ten years and whether he had ever suffered from various diseases, including gall bladder and heart. The policy provided that it should not take effect unless on its date, Oct. 4, 1948, the insured should be in sound health. Application and policy expressly showed the relationship of death beneficiary to insured as "friend." The policy also contained substantial benefits for accidental injuries, which were payable to the insured.

The insured died on Dec. 27, 1948, within the period covered by the first premium payment, and upon refusal of defendant to pay this action was brought in the Court of a special Magistrate of Anderson County. Section 3752, Code

of 1942. After the evidence was in the parties agreed that the jury should be discharged and all issues of fact and law determined by the Magistrate. Plaintiff and defendant moved for direction of verdict and the Magistrate found on all issues for plaintiff which was affirmed on review by the Court of Common Pleas, whence this appeal.

Appellant states three questions, as follows:

1. Is the policy sued on a wagering contract and therefore void?

2. Did appellant waive the sound health provision in the policy?

3. Did the insured knowingly and fraudulently conceal his true physical condition?

In support of its first position appellant cites *Croswell v. Connecticut Indemnity Association,* 51 S. C. 103, 28 S. E. 200; *Hack v. Metz,* 173 S. C. 413, 176 S. E. 314, 95 A. L. R. 196; *Henderson v. Life Insurance Co. of Virginia,* 176 S. C. 100, 179 S. E. 680; and *Elmore v. Life Insurance Co. of Virginia,* 187 S. C. 504, 198 S. E. 5.

These authorities conform to the rule that one cannot obtain valid insurance upon the life of another in whom he has no insurable interest; but it is generally held that one may procure insurance on his own life and make it payable to whomever he will if in good faith and not to cover a wagering policy. The latter follows from the precept that everyone has an insurable interest in his own life. 29 Am. Jur. 312, Insurance, sec. 355; 44 C. J. S., Insurance, § 202, p. 899. 2 Appleman on Insurance Law and Practice, Ch. 45, Insurable Interest, § 761 *et seq.,* page 77 *et seq.* This was the consideration which moved the lower court to find for respondent and it renders irrelevant the cases of contrary facts cited in the brief. There was no evidence or finding of fraud, or deception of appellant in this connection. The circumstances and surroundings of the negotiations negate that. They took place in a "fishbowl" without indication of *mala fides* or attempt to "cover" an

unlawful transaction. Applicable is the following oft-quoted (see for examples in other than our cases, 175 A. L. R. 1289; 44 C. J. S., Insurance, § 212, p. 915, footnote 49, and *Hardy v. Aetna Life Ins. Co.,* 154 N. C. 430, 70 S. E. 828) excerpt from the well-reasoned opinion in *Crosswell v. Connecticut Ind. Ass'n, supra,* 51 S. C. at pages 116, 117, 28 S. E. at page 205: "A sound public policy requires the enforcement of contracts deliberately made which do not clearly contravene some positive law or rule of public morals. It is surely not a sound policy to permit insurers to contract to insure the lives of persons, receive premiums therefor as long as the insured, the beneficiary, or the assignee will continue to pay, and then, when the time comes for the insurers to pay what they agreed to pay, allow them to escape their contract on the ground of want of insurable interest in the life insured, unless it clearly appears that such contracts are pernicious and dangerous to society. Courts should not annul contracts on doubtful grounds of public policy. In such matters it is better that the legislature should first speak."

In connection with the last sentence of the foregoing quotation it should be said that nothing on the subject appears in the extensive Insurance Code enacted by the General Assembly at its 1947 session, 45 Stat. 322, or elsewhere in the statutes.

There is reference in appellant's brief to the irrelevancy of waiver or estoppel of the insurer with respect to the defense of lack of insurable interest, which is maintained by some of the cited cases; however, the decision of the trial court did not depend upon that and we need not dwell upon it. But see 44 C. J. S., Insurance, § 212, p. 915, and 29 Am. Jur., Ins., sec. 321, 1949 Supp. An interesting critique of the pertinent decisions from this court is found in 175 A. L. R. 1288, 1289.

It is sufficient answer to appellant's first question that the policy here was not a wagering contract for the reason that the insured in frankness and good faith

applied for and obtained it. That fact was found by the trial court upon supporting evidence, which concludes us thereabout.

■ The factual findings also bind this court with respect to the second question. It was properly found that notice to the agent that the applicant was "drawing disability" was sufficient notice to the company to put it upon inquiry as to his true state of health; and that subsequent issuance of the policy was waiver of the sound health provision. *Rogers v. Atlantic Life Ins. Co.*, 135 S. C. 89, 133 S. E. 215, 45 A. L. R. 1172. *Abercrombie v. Pilot Life Ins. Co.*, 214 S. C. 350, 52 S. E. (2d) 400, and cases cited.

■ Consideration of the testimony is convincing that the trial court likewise did not err in finding and holding against appellant's contention of fraudulent concealment of physical condition by the applicant which should vitiate the policy for fraud. Thus the third question is also answered adversely to appellant.

Judgment affirmed.

FISHBURNE, TAYLOR and OXNER, JJ., and A. L. GASTON, A. A. J., concur.

BAKER, C. J., not participating.