12653

ROBERTS v. NATIONAL BENEFIT LIFE INS. CO.

OF WASHINGTON, D. C.

(148 S. E., 179)

*Mr. N. J. Frederick,* for appellant,

*Mr. C. T. Graydon,* for respondent,

May 7, 1929.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

This was an action instituted in the County Court of Richland County by Lizzie Roberts, the beneficiary on an insurance policy taken with the National Benefit Life Insurance Company of Washington, D. C., by one Gabriel Howard, or Gabella Howard, on the life of Gabella Howard. The action was tried in the Richland County Court before Hon. M. S. Whaley and a jury, and the verdict resulted in favor of the plaintiff for the sum of $500, the amount claimed under said policy.

From the testimony in the case it appears that the said Gabella Howard, the deceased, was approached by an agent of the insurance company with the end in view of taking a policy with the company, and, after several visits, she consented to take said policy and the application was duly taken by the agent in accordance with the custom of the company. The agent did not testify at the trial of the case, but the examining physician of the defendant company did testify, and his medical certificate was introduced in evidence. After examination of the physician, the applicant was accepted, the policy issued, and the premiums duly paid thereon from the date of the issuance of the policy on the 9th day of March, 1925, to the date of the death of the insured on October 28, 1926.

The exceptions are 5 in number, but do not include as many questions. Each exception raises several issues which, in the case of most of the exceptions, are merely restatements of former questions raised. The material questions raised by the exceptions are:

(1) Was Gabriel Howard and Gabella Howard one and the same person?

(2) Was the application for insurance on the part of the deceased obtained by fraudulent representations of such character as to avoid the policy?

(3) Whether or not the beneficiary had an insurable interest in the life of the deceased and if the beneficiary had no insurable interest in the life of the deceased, whether or not the company waived such requirement by its conduct.

(4) Whether or not the county Judge erred in charging the jury on the question of waiver.

There can be no question that under the pleadings in this case as well as under the statement made by appellant's counsel one of the material issues of fact to be submitted to the jury was the question of the identity of the persons. The case was tried on this theory, and there was ample evidence on the part of the plaintiff to submit to the jury on the question of identity. This was a question of fact which, under the decisions of our Court when supported by evidence, will not be disturbed by the appellate Court.

As to the second question, it will be recalled from the testimony that not only was the insured seen personally, by the agent for the company, but was also examined by the company's duly authorized physician. Under the testimony of the plaintiff in this cause, there was no misrepresentation or fraud practiced upon the agent at the time of the taking of the application. The agent was present and saw the insured, and if the condition existed at the time as alleged by defendant, the agent was compelled to have seen it. The rule is well settled in this State that an insurance company is bound by the knowledge of an agent or representative of the company acting within the scope of his authority even though the agent may be actuated at the time by fraud. *Reardon v. Insurance Company*, 79 S. C., 526, 60 S. E., 1106; *Madden & Co. v. Insurance Co.*, 70 S. C., 295, 49 S. E., 855; *Fludd v. Assurance Soc.*, 75 S. C., 315, 55 S. E.,

762; *Rogers v. Insurance Co.,* 135 S. C., 89, 133 S. E., 215, 45 A. L. R., 1172.

But even if, as the appellant contends, the insured was afflicted with disease or physical disability, the doctor of the company made an examination of the applicant and reported that he found the applicant a good risk. Under the decisions of our Court such testimony is evidence either that the disease or affliction did not exist or that the doctor knew of the same and waived the condition. *Johnson v. Metropolitan Life Insurance Co.,* 111 S. C., 398, 98 S. E., 140; *Gamble v. Insurance Co.,* 95 S. C., 196, 78 S. E., 875; *Baker v. Metropolitan Life Insurance Co.,* 106 S. C., 419, 91 S. E., 324; *Wingo v. Insurance Co.,* 112 S. C., 139, 99 S. E., 436.

The third question involves the question of the insurable interest of the beneficiary in the life of the deceased. Under the testimony in the case, which is not disputed, it appears that the insured took the policy herself and named the plaintiff, Lizzie Roberts, who is designated as her cousin, as the beneficiary thereunder. It is well settled in this State, that a person may take out insurance on his or her life and name any one as the beneficiary. Quotation from the case of *Crosswell v. Indemnity Association,* 51 S. C., 103, 28 S. E., 200, is sufficient on this question. "It is firmly established that insurance procured by one person on the life of another, in which the party effecting the insurance has no interest, is void as a wager contract against public policy, which condemns gambling speculation upon human life. But it is also well settled that a person may insure his own life and make the policy payable to whomsoever he chooses, even though the beneficiary has no insurable interest in his life, provided the transaction is *bona fide,* and not a mere cover to evade the law against wager policies."

The appellant, however, claims that because of the fact that there is some testimony that Lizzie Roberts paid some of

the premiums, this contract should be declared void and the beneficiary not allowed to collect the amount due under the policy. Regardless of whether the policy was taken by the insured or the beneficiary, the company knew at the time of the issuance of the policy and the acceptance of the application, that the beneficiary was the cousin of the insured and was at the time staying in the house with the insured. The premiums were accepted for more than a year and a half with this knowledge in the possession of the company. The insurance was solicited by the agent of the company who had full knowledge or at least opportunity to investigate all phases of the relationship between the parties. As has been well stated by this Court in a late case, that of *Rogers v. Atlantic Life Insurance Co.,* 135 S. C., 89, 133 S. E., 215, 45 A. L. R., 1172:

"Again: If W. S. Rogers had no insurable interest in the life of his brother, there was testimony at the trial of the case tending to show that Tiller, the general agent of the company, some time before the policy was issued, went to W. S. Rogers, and suggested to him that he take out a policy of insurance on the life of his brother, James A. Rogers; that W. S. Rogers, acting on Tiller's suggestions, saw his brother about the matter, who consented and agreed that the policy be taken out; that Tiller had full knowledge that W. S. Rogers was to be the ultimate beneficiary under the policy and was to pay the premiums thereon; that Tiller actually delivered the policy to W. S. Rogers and collected the premium from him; and that the whole transaction, including the application for the policy, the issuance of same to the estate of James A. Rogers, and its subsequent assignment to W. S. Rogers, was carried out under the directions and according to the instructions of the agent Tiller."

See, also, *Hankinson v. Piedmont Mutual Insurance Co.,* 80 S. C., 392, 61 S. E., 905, and *Huestess v. South Atlantic Life Insurance Co.,* 88 S. C., 31, 70 S. E., 403.

It was the duty of the County Judge to charge the jury on the question of waiver, and his charge was fair, impartial, and explicit on this issue. There was a question as to whether or not the agent waived any alleged physical disability of the insured, as to whether or not the doctor waived any alleged physical disability of the insured, whether or not the company waived the alleged lack of insurable interest in the beneficiary, and as to whether or not the conduct of the company in the entire transaction did not constitute waiver under the law. This was an issue raised by the testimony in the cause and was properly submitted to the jury under the charge of the County Judge.

All exceptions taken are without merit and are overruled, and the judgment of the County Court is hereby affirmed.

MR. JUSTICE BLEASE (concurring) : Mr. Justice Cothran bases his dissent in this case entirely upon the ground that the defendant's motion for a directed verdict in its favor should have been granted, because "the overwhelming preponderance of the evidence shows that the woman Gabella Howard, upon the proof of whose death the plaintiff claims the insurance, was not the Gabriel Howard in whose name the policy was issued; and that the scheme of the plaintiff is a frame up to beat the insurance company." Perhaps my distinguished brother has rightly sized up the case. If he and I had been members of the jury who tried the case, it is very likely that he would have convinced me that his view was correct, and I would have joined with him in finding for the defendant or forcing a mistrial. And, yet, at this distance, I cannot say that the jury, who tried the case, did not render the correct verdict; nor that Judge Whaley, who presided at the trial, did not do right in allowing the jury's verdict to stand. The County Judge and the jurors saw the witnesses and heard their testimony, and that testimony was entirely sufficient, under all of our decisions, to require the Judge to submit the case to the jury. It is altogether probable that the jury came to the conclusion that the poor, ignorant woman,

who is the plaintiff, could not have worked up a great scheme of fraud upon the smart negro insurance agent and smarter negro doctor, who represented the defendant negro insurance company. I expect the jury came to the conclusion that the insurance company and its representatives were overly anxious to get the little insurance business. These companies and their agents and physicians, as it is well known, in many instances impose upon ignorant colored people for the purpose of collecting premiums and later seek to avoid their contracts. About the best way I know to put an end to this imposition is for this Court to stand by the verdicts of juries, when the law will permit us to do so, when the juries have made the companies pay up.

There was plenty of evidence in this case to sustain the verdict of the jury, and that is the only question before this Court.

MR. JUSTICE STABLER (concurring) : I concur upon the ground that under the conflicting testimony the case was properly submitted to the jury. The weight of the evidence and the credibility of witnesses are matters for the jury and not for the Court.

MR. JUSTICE CARTER concurs.

MR. JUSTICE COTHRAN (dissenting) : This is an action upon a policy of insurance upon the life of a woman named in the policy, "Gabriel Howard," for $500; the beneficiary named is the plaintiff, Lizzie Roberts, alleged to be a first cousin of the insured. It is claimed by the plaintiff that the insured died in October, 1926. The defense of the company is that there was no such person in existence as Gabriel Howard; that there was a woman who lived in Sumter County known as Gabella Howard, wife of John Howard; that she died in October, 1926; that she was never insured by the company; and that the claim for insurance is based upon the proof of her death, falsely claimed to have been the Gabriel Howard whose life was insured by the policy.

The evidence tends to establish the following facts :

In February, 1925 (the date is important, as will appear), the plaintiff, Lizzie Roberts, signed an application in the name of Gabriel Howard for the insurance. Why she signed it, when the evidence shows that the application had to be signed by the applicant for insurance, the person to be insured, does not appear. She, however, acknowledged that she had written the name purporting to be the signature of Gabriel Howard to the application. In the application it was stated, presumably according to information imparted by Lizzie Roberts, that Gabriel Howard was a single woman, residing at 1113 Gates Street, Columbia, S. C., aged 20 years, in good health, never been in a hospital or under treatment for anything, height 5 feet, 4 inches, weight 110 pounds, never suffered from heart disease, disease of kidneys, liver, or any chronic trouble or accident of any kind, relationship of beneficiary to insured cousin; age of beneficiary 30. Upon the filing of the application the company's medical examiner was sent down to make the examination of Gabriel Howard, the person proposed to be insured. He made a report signed in the name of Gabriel Howard and himself, giving the name of the applicant and residence as Columbia, S. C., age 20; apparent age 20; no paralysis, insanity or deformity; hearing and eyesight good; no suspicion of any disease; pulse rate normal; heart movement none; arteries normal, urine unaffected by albumen or sugar. In answer to the question, "Do you consider the applicant a first-class, good, fair, doubtful, or bad risk?" he answered, "First-class."

Look upon that picture and this:

The woman Gabella Howard, upon proof of whose death the insurance is claimed, was the wife of John Howard; mother of six children, the youngest of which at the time of her death in October, 1926, was about 3½ years old; about 2 when the policy was issued. She lived with her husband near Rembert in Sumter County, on a farm; in 1921 she and her husband went to Philadelphia, stayed there a year and a

half, and returned on account of her bad health. Her family physician testified that he began to treat her in the early part of 1924, the year before the date of the policy; that she had chronic Bright's disease and high blood pressure; that he treated her up to the time of the tornado, the last of April, 1924, during which she suffered a broken leg, was taken to the hospital for six weeks, returned home, and continued to receive treatment for the same disease; that she was on crutches as a result of the broken hip as long as she lived through the remainder of 1924 and until her death in 1926; that it was impossible for a correct examination to have shown arteries normal and no albumen or sugar in urine in a person in her condition. Her husband testified that the plaintiff, Lizzie Roberts, was not related in any way to his wife and that she had never made a trip to Columbia visiting her or sent any money there for insurance premiums; he also testified to her injury as the result of the house being blown down by the storm of April, 1924, and of his wife's condition thereafter. On October 29, 1926, the local register issued a death certificate reciting: Gabella Howard, married, aged 30, occupation field laborer."

On October 30th, Dr. Kirk issued a medical certificate of the death of Gabella Howard on October 28, 1926; that he attended her from June to October; that she died from "chronic interstitial nephritis," which had continued for two years; that she also had arteriosclerosis.

On November 23d the plaintiff filed a statement and certificate of claim, in which she swore that the deceased was unmarried, and that the premiums upon the policy had been paid by her, the beneficiary.

Upon this evidence the defendant moved for a directed verdict in its favor upon several grounds, only one of which I consider it worth while to discuss, namely, that the overwhelming preponderance of the evidence shows that the woman Gabella Howard, upon the proof of whose death the plaintiff claims the insurance, was not the Gabriel Howard

in whose name the policy was issued, and that the scheme of plaintiff is a frame-up to beat the insurance company. I care not whether there was such a person as Gabriel Howard in existence or not; the evidence convinces me that nearly a month after the death of Gabella Howard, the plaintiff attempted to identify her dead body with the Gabriel Howard named in the policy and to work a barefaced fraud upon the company. The case is reeking with the most improbable narration of events and the most conflicting evidence as to the identity of Gabella Howard with the person named in the policy.

There is no question but that Lizzie Roberts lived on Gates Street in the City of Columbia and that Gabella Howard lived in the country near Rembert in Sumter County with her husband on a farm. She was the mother of six children, the youngest being about two years old at the time the policy was issued. The plaintiff will have the Court to believe that although the intercourse between her and Gabella was so meager that she did not know that Gabella was married (stating in her signed application that she was single), without invitation or notice Gabella left her husband and children and came almost without bag or baggage to pay her a visit of four months, and that during that period not a word of communication passed between Gabella and her deserted family. It is strange that the plaintiff, who could barely sign her own name, while Gabella could write, should have signed the application for the policy. It is stranger still that the applicant was described as a young woman, unmarried, 5 feet 4 inches tall, aged to her exact birthday 20 years old, while the real Gabella was 30, married, very tall, and in wretched health. A reputable physician testifies that for more than a year before the policy was issued Gabella was suffering with a mortal disease, while the physician who made the medical examination for the application states that the woman he examined was in perfect health and a first-class risk. What is more conclusive to my mind is the fact that a

year before the policy was issued Gabella's house was caught in the wake of a tornado, blown to pieces, and her hip broken in the collapse of her home. From that day to the day of her death, a period which covered the date of the issuance of the policy she was a cripple upon crutches, having to be helped in and out of a buggy as she visited her physician for relief of the fatal malady which carried her off.

It is absolutely incredible that a woman with a husband and little children should keep alive a policy in favor of another woman who, so far as the evidence shows, was never even in her home—a woman claiming to be a cousin and who the husband testified was not related to her in the remotest degree. It is to his credit that he is not a party to this unspeakable fraud.

I think that the judgment of this Court should be that the judgment appealed from be reversed and the case remanded to the trial Court for the direction of judgment in favor of the defendant under Rule 27.