## 14016

### HENDERSON v. LIFE INS. CO. OF VIRGINIA

(Four cases)

(179 S. E., 680)

104

106

*Messrs. W. E. Bowen, Jos. R. Bryson* and *Robinson & Robinson,* for appellant,

124

*Messrs. Blythe & Bonham* and *H. C. Miller,* for W. D. Thomas, executor of James R. Thomas.

*Messrs. Thomas, Lumpkin & Cain* and *Morgan & Cothran,* for respondent,

March 11, 1935.

The opinion of the Court was delivered by MR. J. HENRY JOHNSON, ACTING ASSOCIATE JUSTICE.

By reference to the order of the Circuit Judge, from which this appeal emanates, it will be noted that plaintiff-appellant sought to strike from the answer of the defendant insurance company all of its defenses, and that such motion was refused *in toto*. Let the order below, the exceptions thereto, and the answer of the insurer be reported.

The exceptions, properly applied to the facts pleaded, raise these questions:

(1) In an action upon a life insurance policy, is a provision that the policy shall be incontestable after one year from its date, except for non-payment of premiums, affected by the death of the insured within the year?

(2) In such action, is the defense of fraud and misrepresentation in the application available to the insurer after the expiration of the period of contestability?

(3) Is such defense available to the insurer after it has received the premium on such policy for the space of two years?

(4) Is a policy of life insurance which is procured by the beneficiary thereof, on the life of one in which he has no insurable interest, a valid contract?

(5) Is an insurer, after the expiration of the period of contestability fixed by an incontestable clause, precluded from contesting a policy upon the ground that the beneficiary, who procured the issuance thereof, had no insurable interest in the life of the insured?

(6) In an action upon a policy of life insurance, is it a valid defense thereto, if pleaded and proved, that the *beneficiary* procured the issuance of such policy *with the .predetermined intent to murder the insured, and did thereafter murder the insured?*

(7) Is an insurer, after the expiration of the period of contestability as fixed by an incontestable clause, precluded from contesting a policy upon the grounds that it was procured by the beneficiary with the intent to murder the insured, and that such intent was consummated?

(8) If it be established that the beneficiary procured the issuance of such policy with the predetermined intent to murder the insured, and thereafter did so, is the policy wholly void and unenforceable, or will the proceeds thereof be adjudged to be payable to the estate of the insured?

1. The overwhelming weight of authority is to the effect that the death of the insured does not affect the running of the period fixed by a clause in a life insurance policy making it incontestable after a specified time. *Humpston v. State Mutual Life Assurance Company,* 148 Tenn., 439, 256 S. W., 438, 31 A. L. R., 78; *Missouri State Life Ins. Co. v. Cranford,* 161 Ark., 602, 257 S. W.,

66, 31 A. L. R., 93; *Mutual Life Ins. Co. v. Hurni Packing Company,* 263 U. S., 167, 44 S. Ct., 90, 68 L. Ed., 235, 31 A. L. R., 102, and annotation thereof at page 109.

1-a. And, when the insured dies within the period ■ named in such ·clause, the running of the period therein fixed is terminated only by a legal contest within the time prescribed by the incontestable clause. If the insured's beneficiary, or his personal representative, does not institute an action before the expiration of the period of incontestability, then the insurer, in order to avail himself thereof, must, before its expiration, contest the policy by some proceeding in Court. *Priest v. Kansas City Life Ins. Co.,* 119 Kan., 23, 237 P., 938, 41 A. L. R., 1100; Vance on Insurance (2d), 818, 819, 826. This view does not, in our opinion, conflict with the decision of this Court in *New York Life Insurance Company v. Greer,* 170 S. C., 151, 169 S. E., 837.

2. The defense of fraud and misrepresentation in ■ the application is not available to the insurer after the expiration of the period fixed in the incontestable clause, unless, perhaps, such defense is specifically reserved to the insurer in that clause. *Metropolitan Life Ins. Co. v. Peeler,* 71 Okl., 238, 176 P., 939, 6 A. L. R., 441, and particularly the annotation at pages 448, 450-452; *United Order of the Golden Cross v. Overton,* 203 Ala., 335, 83 So., 59, 13 A. L. R., 672, annotation at pages 674, 675; 55 A. L. R., 549, note; *Phila. Life Ins. Co. v. Arnold,* 97 S. C., 418, 81 S. E., 964, Ann. Cas., 1916-C, 706; *Mc-Kendree v. Sou. States Life Ins. Co.,* 112 S. C., 335, 99 S. E., 806; *Beard v. North State Life Ins.* Co., 104 S. C., 45, 88 S. E., 285; *Weeks v. N. Y. Life Ins. Co.,* 128 S. C., 223, 122 S. E., 586, 35 A. L. R., 1482.

3. By the specific provisions of Section 7986, Code of 1932, and the decisions of this Court thereunder cited, fraud and misrepresentation in the application are not available to the insurer after two premiums have been paid.

4. The authorities are unanimous in holding that the ■ beneficiary under a life insurance policy, *who procures insurance upon another,* must have some kind of interest in the continuance of the life of the insured, and that a person cannot take out a valid and enforceable contract of insurance for his own benefit upon the life of one in whom he has no insurable interest—such a policy contract is void and unenforceable as being a mere wagering contract and contrary to public policy. *Crosswell v. Association,* 51 S. C., 103, 114, 28 S. E., 200, 201; *Rogers v. Atlantic Life Ins. Co.,* 135 S. C., 89, 133 S. E., 215, 45 A. L. R., 1172; 37 C. J., 385.

5. But appellant argues that "lack of insurability" ■ may be waived, citing as authority therefor the *Crosswell* and *Rogers cases, supra,* and *Roberts v. Nat'l Benefit Life Ins. Co.,* 150 S. C., 326, 330, 148 S. E., 179 (4); and that, as a consequence thereof, the defense that the beneficiary had no insurable interest in the life of the insured is not available to the insurer after the period of contestability has run.

These cases are not authority for the principle that an insurer can waive "lack of insurability" *when the beneficiary procures the issuance of the policy contract, and has no insurable interest in the life of the insured.* In *Crosswell's* case the insurance was procured by the insured, not by the beneficiary, and all that this Court held was that *one who procures insurance on his own life* may name any one as the beneficiary, provided the transaction is *bona fide,* and not a mere cover to evade the law against wager policies; that *the interest which insured has in his own life supports the policy,* and prevents its condemnation as a wagering contract. The principle actually announced is analogous to the principle that one may devise all of his property to a stranger. No more complete answer to the contention of appellant can be presented than the language used by this Court: "It is firmly established that insurance procured by

one person on the life of another, in which the party effecting the insurance has no interest, *is void as a wager contract against public policy,* which condemns gambling speculation upon human life. But it is also well settled that *a person may insure his own life, and make the policy payable to whomsoever he chooses,* even though the beneficiary has no insurable interest in his life, *provided the transaction is bona fide, and not a mere cover to evade the law against wager policies.* * * * *In such case the interest which the insured has in his own life supports the policy, and prevents it from being condemned as a wager contract."* (Italics ours.)

The facts of that case were wholly different from those alleged here, and there is no intimation, insinuation, or assertion by way of *obiter dicta* that, when a policy contract is *procured by a beneficiary who has no insurable interest in the life of the insured,* the insurer may waive the "lack of insurability." *On the contrary,* the Court even goes so far as to declare that, although one may procure insurance on his own life and name whomsoever he chooses *as beneficiary, such a transaction must be bona fide,* and not a mere scheme to circumvent the law against wagering contracts. In sustaining the lower Court, which had overruled a demurrer to the complaint, this Court narrated the facts upon which it based its decision as follows: "It is therefore alleged in the complaint substantially that Susan A. Crosswell procured a policy of insurance on her own life, in consideration of the payment by her of the annual premiums, and made the same payable to her *daughter* Mary E. Crawford, if living, otherwise to the executors, administrators, or assigns of Susan A. Crosswell; and it further appears that the policy was assigned to the *son* of the insured by both the beneficiary and the insured, with the consent of the insurer."

Moreover, both daughter and son had an insurable interest in the life of their mother. 37 C. J., 393, note 92.

In *Rogers' case,* as in *Crosswell's case, the insurance policy was actually procured by the insured,* not by the beneficiary,

since the policy was made payable to the insured's estate. After delivery, insured *assigned* the policy to his *brother.* Upon the death of the insured, defendant company denied liability upon the ground of fraud and misrepresentation in the application, and upon the further ground that insured had the fatal and malignant disease of cancer, which fact he concealed from the insurer by his answers. At the close of plaintiff's evidence, defendant was permitted to interpose the additional defense of the brother's "lack of insurable interest." This case is no authority for the contention that "lack of insurable interest may be waived by the insurer," for three reasons: (1) The insurance was procured by the insured upon his own life, not by the beneficiary; (2) it was held that the *brother* to whom the policy was *assigned* actually had an insurable interest in the life of the insured because of the natural feelings of one brother for another, and because their relations "were characterized by brotherly affection and reciprocal aid and help"; (3) the policy having been procured by the *insured,* and the assignee thereof having an insurable interest in the life of insured, so much of the opinion as intimates that "lack of insurability" may be waived by the insurer is mere *obiter dicta.* Moreover, such *dicta* is predicated upon the authority of *Crosswell's case, supra,* which, as indicated, is no authority for the principle contended for.

In *Roberts' case,* 150 S. C., 326, 148 S. E., 179, as in *Crosswell's* and *Rogers' cases,* again *the policy contract was procured by the insured,* who, of her own volition, named her cousin as beneficiary. As held in *Crosswell's case,* so it was held in this case, that a person may insure his own life and name anyone as beneficiary, even though the beneficiary have no insurable interest in the life of the insured—just as a testator may devise his entire estate to a mere stranger— *"provided the transaction is bona fide, and not* a mere cover to evade the law against wager policies." It is true that the opinion in *Roberts' case,* as did that in *Rogers' case,* goes

on to assert that lack of insurability may be waived, but again this is *dicta,* for, having held that insured had the right to procure a policy on her own life and name her cousin as beneficiary, it was unnecessary to the decision in that case to declare that lack of insurability may be waived. Such *dicta* in *Roberts' case* is rested upon the cited authority of *Rogers' case,* but, as pointed out, that portion of the decision in the latter cause was *dicta.* Appellant cites no other authority for her contention, except *Wright v. Ins. Co.,* 118 N. Y., 237, 23 N. E., 186, 6 L. R. A., 731, 16 Am. St. Rep., 749, and the policy in that case provided, in the incontestable clause, that all questions affecting its validity must be raised within two years, *and during the life of the insured.*

It is indisputable, therefore, that we have no binding precedents in this State in support of the proposition that "lack of insurable interest may be waived by the insurer." On the contrary, we have recently held (*Hack v. Metz,* 173 S. C., 413, 176 S. E., 314) that (1) neither the doctrine of waiver nor (2) of estoppel can be invoked to make valid and enforceable a wagering and speculative contract which is illegal because it is against good morals and public policy (syllabus paragraphs Nos. 6 and 8) ; and such decisions as we find in other jurisdictions invariably hold that lack of insurability cannot be waived; that a policy of insurance, *procured by the beneficiary thereof* upon the life of one in which he has no insurable interest, *is void in its inception, and is not rendered valid by a clause declaring it to be incontestable after the lapse of a specified period of time.* See authorities cited in Judge Ramage's order, and 37 C. J., 386, 398; *Brady v. Prudential Life Ins. Co.,* 5 Kulp (Pa.), 505; *Clement v. Ins. Co.,* 101 Tenn., 22, 46 S. W., 561, 42 L. R. A., 247, 70 Am. St. Rep., 650; 6 A. L. R., 452, note. The rationale of these decisions is bottomed upon the principle that such contracts are void *ab initio;* that it is contrary to a sound public policy to permit one, having no interest in the continuance of the life of another, to specu-

late upon that other's life—and it should be added that to permit the same might tend to incite the crime of murder, or operate to cause the beneficiary to decline, in the event of accident or carelessness, to exert himself to save the life of the insured—and that the rule is enforced, and the defense permitted, not in the interest of the defendant insurer, but solely for the sake of the law, and in the interest of a sound public policy; that the contract is void in its inception; that "the incontestable clause is no less a part of the contract than any other provision of it"; and, when the contract fails, the incontestable clause necessarily fails with it.

In a day when statistics tend to establish the fact that homicides are increasing in this commonwealth and in the nation more rapidly than ever before in our history, this Court is loath to enunciate any principle which might tend to promote the inadvertent or malicious taking of human life, and, without intending our remarks as an expression *of opinion* upon the facts of the instant cause, we adhere to our former decisions to the effect that one cannot, by his own act, procure a valid and enforceable policy of insurance for his own benefit upon the life of another in which he has no insurable interest; that such a contract of insurance is void in its inception and unenforceable on grounds of public policy, being a mere wagering contract; and now declare that, where a beneficiary, having no insurable interest in the life of the insured, himself procures the issuance of such a policy upon his own application therefor, the insurer is not precluded, by an incontestable clause, from contesting the policy upon such grounds.

6, 7. We are satisfied, under the authorities cited in his order, with the reasoning and the conclusions reached by the Circuit Judge, upon what we have designated as the sixth and seventh questions raised by the exceptions, that a contract of insurance procured upon the life of another by the beneficiary thereof, with the predetermined intent to murder the insured, is wholly void at

its inception as being repulsive to every humane instinct, repugnant to public policy, and involving such a risk as the insurer should not be charged with assuming; and that such a defense, in an action upon the policy, is not precluded by the incontestable clause, since the latter is no less a part of the policy contract than its other provisions, and, if the contract be void, the incontestable clause falls with it. It may be mentioned in this connection that no precedents contrary to the authorities cited by his Honor have been presented to us by appellant, and that we have found none in conflict therewith. If such a contract, the mere thought of which shocks the conscience and incites every decent instinct to surge in indignation and revolt, be not void as against public policy, it would be difficult to conceive of one that does contravene the public policy of this commonwealth.

8. If such facts be established upon a trial of the cause upon its merits, is the policy wholly void and unenforceable, or will the proceeds thereof become payable to the estate of the insured? It necessarily follows, as a result of the conclusions hereinbefore announced, that, in the event of the establishment of such facts, the policy will be declared to have been void in its inception, and that no one can benefit by its provisions. The authorities cited by counsel for appellant, including *Smith v. Todd,* 155 S. C., 323, 152 S. E., 506, 70 A. L. R., 1529, and *Keels v. A. C. L. R. Co.,* 159 S. C., 520, 157 S. E., 834, to the effect that the murder of an insured by the beneficiary does not relieve the insurance company from liability, but merely transfers the proceeds from the beneficiary to the estate of the insured, are not in point here, having no application whatever *where the policy was procured by the beneficiary and with the predetermined intent to murder the insured.* The cases approving the principle contended for by appellant did not involve the question of the *bona fides* of the contract when it was made, and our own cases merely dealt with the question of whether or not a beneficiary,

*under a valid contract of insurance,* forfeited his rights by murdering the insured. No contention was made, or suggested in those cases, that the beneficiary (1) either procured the insurance, or (2) had the intent, at the instant the policy was procured or issued, subsequently to murder the insured; and it may be repeated that, in the exhaustive brief submitted by counsel for appellant, no case is cited where any Court has sanctioned recovery upon a policy of insurance procured and matured under the circumstances, and with the intent alleged to have accompanied the procurement of the policies litigated upon in the instant causes.

As hereinbefore indicated, plaintiff's motion to strike from the answer of the defendant insurer the alleged defense of fraud and misrepresentation in the application should have, under the authorities cited, been granted; and to that extent the decree of the Circuit Judge is modified. In all other respects it is affirmed.

Messrs. Justices Carter and Bonham concur.

Mr. Justice Stabler concurs in result.