Edith BOLICK, Plaintiff,

v.

The PRUDENTIAL INSURANCE COM-
PANY OF AMERICA, Defendant.

Civ. A. No. AC–1832.

United States District Court
D. South Carolina,
Columbia Division.

Feb. 2, 1966.

Theodore W. Law, III, Columbia, S. C., for plaintiff.

Clarke W. McCants, Jr., Columbia, S. C., for defendant.

HEMPHILL, District Judge.

Motion to strike certain portions of defendant's answer, and thereafter to realize Summary Judgment in favor of plaintiff under Rule 56(a), Federal Rules of Civil Procedure, invite this Court's decision. This is a diversity action in which it is undisputed that defendant, on June 1, 1963, issued, in full force and effect, its contract of insurance (policy) No. 27,988,442 insuring the life of plaintiff's (beneficiary) husband in the amount of $11,000.00. The insured died March 14, 1965. Upon hearing of the motion(s) counsel agreed that defendant was promptly, and within reasonable time, notified of the death of insured. No action was instituted until plaintiff beneficiary brought suit October 14, 1965 [1] in Richland County, S. C. Court of Common Pleas. This was more than 28 months after the policy was issued. The

---

1. The date of the summons: the Clerk of Court for Richland County did not certify the record to this Court. On 26 October 1965 defendant filed Petition and Bond for Removal, alleging in the Petition that the summons was served on the South Carolina Insurance Commissioner October 14, 1965 and not disputing the validity of such service.

issues, as joined, reveal no dispute as to diversity of citizenship. Defendant does not dispute payment of premiums by the United States Government, by allotment out of deceased's pay.

Plaintiff has no right to seek adjudication of her motion for Summary Judgment under Rule 56(a) [2] unless she first prevails in the Motion to strike Paragraphs 9, 10, 11, 12 and 13 of defendant's Answer as noticed for attack, under Rule 12(b).[3] The attacked paragraphs encompass the whole defense, and read: (Paragraph 13 will be discussed hereinafter).

(9) That after the death of Dwight Bolick and in investigating the claim of the Plaintiff for benefits under policy number 27 988 442, the Defendant discovered that Dwight Bolick had, on the Defendant's information and belief, been confined in Army hospitals at different places on several occasions prior to the making of Part 2 of his written application for insurance, for various medical and health reasons; and that, on the Defendant's information and belief, Dwight Bolick was confined in the United States Army Hospital, at Fort Jackson, South Carolina, on or about September 8, 1955 because of the consumption of intoxicants by him; and that, on the Defendant's information and belief, Dwight Bolick was confined at the 48th Surgical Hospital (MA) APO 59 from on or about July 15, 1957 to on or about July 17, 1957 for anxiety reaction and nervousness due to excessive consumption of alcohol; and that, on the Defendant's information and belief, Dwight Bolick was hospitalized on or about November 30, 1957 by Army authorities by reason of a disease or impairment known as acute urethritis; and that, on information and belief, Dwight Bolick was hospitalized by Army authorities on or about February 7, 1962 for drunkenness or chronic alcoholism; and that, on information and belief, Dwight Bolick had other hospital confinements not herein specifically alleged and consulted physicians for excessive drinking and for alcoholism and for other medical reasons prior to the date of his written application for insurance coverage with the defendant; and that none of the hospital confinements of Dwight Bolick or consultations with medical doctors were disclosed by Dwight Bolick in the written application of Dwight Bolick for policy number 27 988 442.

2. Which reads: For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.

3. Which reads: How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join an indispensable party. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

(10) That, on information and belief, Dwight Bolick had been intoxicated prior to June 6, 1963 and that he was, on information and belief, an habitual user of intoxicating beverages.

(11) That, on information and belief, the answers of Dwight Bolick to the several questions of his written application dealing with his medical and health history, which application forms a part of policy number 27 988 442, were untrue or incomplete at the time of the making of his written application for insurance coverage; and that, on information and belief, Dwight Bolick at the time of his written application knew of his past medical and health history and did misrepresent such past medical and health history to the Defendant, and that this misrepresentation was material to the Defendant's risks; and that if the Defendant had known of such past medical and health history of Dwight Bolick it would not have written or issued policy number 27 988 442; and that, on information and belief, Dwight Bolick misrepresented his medical and health history in order to induce the Defendant to write and issue policy number 27 988 442.

(12) That the Defendant is informed and believes that it is not liable to the Plaintiff for the payment of any death benefits under policy number 27 988 442 because of the misrepresentations of Dwight Bolick, as hereinabove alleged, Dwight Bolick having died within the contestable period as provided by the Laws of the State of South Carolina and by insurance policy number 27 988 442; and that the Defendant is only liable for a return of premiums paid on policy number 27 988 442 in the amount of One Hundred Eighty-eight and 03/100 ($188.03) Dollars, which sum has been paid into the Clerk of this Court.

The issue is not one of fact, and this Court finds it unnecessary to pass on the truth of the facts alleged in the paragraphs quoted. There is a conflict between South Carolina Statute law and the terms of the policy[4]; if plaintiff prevails there remain no issues of fact. This Court, in keeping with direction of higher authority[5], views the record in the light most favorable to the party opposing the motion.

The South Carolina legislature enacted into the laws of this State, with the approval of the Governor, a two-year "incontestability" statute, § 37–161, S.C. Code, 1962,[6] and to clarify any doubts as to the time within which an insurer *must* act to take advantage of alleged falsity in life insurance applications, enacted § 37–162,[7] S.C.Code, 1962.

4. Made a part of the record before the Court by agreement of counsel under Rule 56(e).

5. Poller v. Columbia Brodcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458.

6. Which reads: When policies become incontestable; exceptions.—All companies which issue a policy or certificate of insurance on the life of a person shall, after a period of two years from the date of such policy or certificate of insurance, be deemed and taken to have waived any right they may have had to dispute the truth of the application for insurance or to assert that the assured person had made false representations, and such application and representations shall be deemed and taken to be true. But when the age of the person insured, or of any other person whose age is considered in determining the premiums, has been misstated the company may at any time adjust any amount payable or benefit accruing under the policy to such as the premiums would have purchased at the true age or ages of such insured or other person.

When any such policy shall contain, in addition to life insurance, agreements for indemnity or benefits for disability or any other coverage, the provisions of this section shall apply to such agreements with the same force and effect as to the life insurance coverage of such policy.

7. Which reads: Proceedings to contest policy; limitation.—Every insurance company doing a life insurance business in this State may institute proceedings to

As presented to this Court by agreement, the policy,[8] under the "General Provisions", on page 5 thereof, in the usual fine print, provides:

INCONTESTABILITY. — This policy will be incontestable, except for non payment of premium, after it has been in force during the lifetime of the Insured for two years from the date of issue.

Admittedly, then, there is conflict between the statute(s) and the policy. In such instances, the South Carolina law is plain and unambiguous:

A two year incontestability statute is part of a life policy. If such contract fails to contain this clause, it will be construed as if it had been incorporated therein at the time of issuance, *and if any conflict arises between the policy and the statute, the conflict will be resolved in favor of the latter*.[9] [Emphasis supplied.]

South Carolina has a legitimate interest in safeguarding those of her citizenry who purchase insurance, or for whose benefit insurance is obtained.[10] And when defendant here chose to enter contractual obligations in South Carolina, it assented to all the reasonable conditions imposed,[11] including the incontestability statutes. "Government has always had a special relation to insurance." Osborne v. Ozlin, 310 U.S. 53, 65, 60 S.Ct. 758, 763, 84 L.Ed. 1074.

In New York Life Ins. Co. v. Truesdale[12] is found an interesting discussion. Affirming the emphatic preemption of statute over policy provision in *Blackwell*, supra, n. 9, Judge Parker noted:

There is a distinct difference between sections 7986[13] [37–161] and 7987 [37–162]. As stated by the learned judge below: "The bar in one is by conduct of the parties. The bar in the other is the currency of time. The first is in the nature of an estoppel. The other is a pure statute of limitations."

In the instant controversy we find defendant's plea barred by both of the permissive statutes. In the *Truesdale* case, supra, the statute was held to be a part of the policy, having greater weight than contrary provisions.

Defendant readily admits that, under South Carolina decisions interpreting the impact of the death of the assured, within the limiting period of two years, does not interrupt the running of the time limitation provided by either or both statutes. See Weston v. Metropolitan Life Ins. Co., 206 S.C. 128, 33 S.E.2d 386, 157 A.L.R. 1198. The same interpretation is found in Henderson v. Life Ins. Co., of Va., 176 S.C. 100, 179 S.E. 680; Altman v. Standard Mutual Life Ins. Co., 204 S.C. 151, 28 S.E.2d 636; Beard v. North State Life Ins. Co., 104 S.C. 45, 88 S.E. 285; Owen v. Bankers' Life Ins. Co., 84 S.C. 253, 66 S.E. 290; Fludd v. Equitable Life Ins. Co., 75 S.C. 315, 55 S.E. 762. This Court agrees.

Defendant further concedes, in its brief for the Court, that the South Carolina interpretation represents the weight of authority[14], but insists that the rule of Erie Railroad Co. v. Tompkins, 304

---

vacate a policy on the ground of the falsity of the representations contained in the application for such policy if such proceedings be commenced within two years from the date of the policy.

8. Designated as a "Term Policy Providing a Decreasing Benefit. Insurance payable only upon death within 30 years. * * *"

9. Blackwell v. United Ins. Co. of America, 231 S.C. 535, 99 S.E.2d 414, 416. See also Parker v. Progressive Life Ins. Co., 235 S.C. 96, 110 S.E.2d 5, 8.

10. See Watson v. Employers Liab. Assur. Corp., 348 U.S. 66, 72, 75 S.Ct. 166, 99 L.Ed. 74.

11. Lafayette Ins. Co. v. French, 18 How. 404, 407, 15 L.Ed. 451.

12. 79 F.2d 481, 483 (4th Cir. 1935).

13. South Carolina Code.

14. Defendant cites *Henderson*, supra; Norris v. Guardian Life Ins. Co., 187 S.C. 535, 198 S.E. 34; Equitable Life Ins. Co. v. Mann, 229 Iowa 945, 295 N.W. 461.

U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, should not apply, and that this Court should hold that where a contestable clause such as exists in the policy before us, is a part of the contract, that a material distinction presents itself so that death, within the two year [or other] statutory period, effects a toll of the limitation statute, makes the policy incontestable at such time after death as may be within the normal statute of limitation period. Defendant cites: Prudential Ins. Co. of America v. Ruby, 219 Ark. 729, 244 S.W.2d 491; Equitable Life Ins. Co. v. Mann, supra; Prilleux v. Metropolitan Life Ins. Co., La.App., 4 So.2d 768; Torrence v. American Home Mutual Life Ins. Co., 78 Ga.App. 648, 52 S.E. 2d 25; National Life & Accident Ins. Co. v. Preston, 194 Ga. 583, 22 S.E.2d 157; Occidental Life Ins. Co. of California v. Kielhorn, 98 F.Supp. 288; Lance v. Prudential Insurance Co., 22 A.2d 3, 19 N.J.Misc. 551; and Chicago National Life Insurance Company v. Carbaugh, 337 Ill. 483, 169 N.E. 218.

Defendant further insists that it should prevail under the reasoning of Hanna v. Plummer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), in which the Court rescued the litigant from a drowning brought about by failure of the United States Marshal to follow Massachusetts statutory requirements as to personal service. Fortunately, this controversy presents no such extreme, invites no bending of the rule of Erie. The South Carolina authority must prevail in order to effectuate, and continue, an equitable administration of the law. After all, if defendant had used the remedy which it now alleges it could pursue under the facts, would this Court rule that, under Erie, the rule was too harsh? It would not.

That the South Carolina statutes and its court's interpretations are controlling are made clear by Judge Sobeloff in Szantay v. Beech Aircraft Corp., 349 F. 2d 60, 63, 64 (4th Cir. 1965) in enlightening language:

1. If the state provision, whether legislatively adopted or judicially declared, is the substantive right or obligation at issue, it is constitutionally controlling.

2. If the state provision is a procedure intimately bound up with the state right or obligation, it is likewise constitutionally controlling.

3. If the state procedural provision is not intimately bound up with the right being enforced but its application would substantially affect the outcome of the litigation, the federal diversity court must still apply it unless there are affirmative countervailing federal considerations. This is not deemed a constitutional requirement but one dictated by comity.

Clearly, there is no counter-vailing federal consideration which would compel this Court to abandon *Erie's* dictate. South Carolina has spoken clearly, and there is no reason why its decision should not be followed.

It is abundantly clear that, under South Carolina Statute(s) and interpretation thereof, paragraphs 9, 10, 11, 12, and 13 of the Answer should be stricken. Thus defrocked, defendant stands naked before the Court with neither fact nor law as protective armor.

It follows that plaintiff's motion for summary judgment should be granted and she is entitled to the proceeds of the policy on her husband.

Plaintiff shall have judgment for $10,-859.86 [15] together with interest from March 14, 1965; costs will follow judgment.

The Clerk will enter appropriate order. And it is so ordered.

15. Amount arrived at by stipulation.