NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, a corporation, Appellee,

v.

Shirley Ann NULL, Individually and as Administratrix of the Estate of Victor G. Null, Deceased, Appellant.

No. 78–1897.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1979.

Decided Sept. 14, 1979.

Don B. Sommers, Sommers & Holloran, St. Louis, Mo. (argued), Andrew P. Deschu, and Joseph W. Toeniskoetter, St. Louis, Mo., on brief, for appellant.

P. Terrence Crebs, Gallop, Johnson, Godiner, Morganstern & Crebs, St. Louis, Mo., argued and on brief, for appellee.

Before LAY and HEANEY, Circuit Judges, and DEVITT,* Chief Judge, United States District Court.

HEANEY, Circuit Judge.

Shirley Ann Null appeals from an order of the District Court which declared void a personal insurance policy issued by New England Mutual Life Insurance Company (New England) on the life of Victor Null. Shirley Ann Null contends that the District Court erred in finding that Victor Null contracted for the insurance solely because Ronald and James Calvert required it as security for their investment in the development of Victor Null's invention. The Calverts, however, actually desired the insurance as part of a plan to obtain the proceeds thereof through Victor Null's murder. This finding follows our reversal of a grant of summary judgment in favor of New England, *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896 (8th Cir. 1977). We remanded the case for a plenary trial on the issue

> whether Null executed the application and procured the insurance for his own purposes and thus became the contracting party with the insurer, or instead merely served as an innocent instrumentality in the evil scheming of Ronald Calvert[.]

*Id.* at 902.

We affirm the District Court's judgment.

The facts giving rise to this action are set out in this Court's prior opinion, *id.* at 898–899, and we briefly summarize them here. Ronald Calvert planned to obtain several insurance policies on the life of Victor Null, an inventor who sought Calvert's financial backing, and then arrange Null's murder and obtain the insurance proceeds. After an unsuccessful attempt at procuring a $500,000 policy from Prudential Insurance Company, Calvert discussed with New England agents the possibility of obtaining a $500,000 policy on Null's life. New Eng-

---

* EDWARD J. DEVITT, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

land's underwriter, however, refused to issue more than $150,000 in "business insurance," or insurance for the benefit of Calvert. After consultation with Calvert and Victor Null, the insurance agent requested a $100,000 personal life insurance policy which the company agreed to issue. On Friday, July 21, 1972, Mr. Null executed an application designating as beneficiary the "Estate of Insured." The following Monday, Null and Calvert arrived at New England's St. Louis office and Null executed an "Absolute Assignment and Change of Beneficiary Request" in favor of James Calvert, Ronald Calvert's father and his straw man and agent in the scheme.

Also on Monday, July 24, Calvert paid the premiums for both the $150,000 business policy and the $100,000 personal insurance policy by a check of his father in the amount of $5,616. New England issued the policies and the agent delivered them to Ronald Calvert.

The parties have stipulated that

"The Calverts" at all times pertinent and prior to the issuance of the policy in question, had a preconceived intent to engage in criminal conduct which would and did result in the murder of Victor Null on November 8, 1972, which intent was unknown to Null and the company (plaintiff).

Null contends that the District Court erred in three respects: (1) New England did not meet its burden of proving fraud because it solicited the policy with knowledge of the underlying business transaction and Null's intent to assign the policy to Calvert; (2) the court failed to examine the question whether Null had an independent business purpose in obtaining the insurance but asked only whether Null intended to benefit his estate by obtaining the insurance, thereby incorrectly interpreting our holding in the earlier appeal of this case; and (3) the court misapplied the law because the evidence showed that Null and New England were the real parties to the insurance contract.

■ The appellant contends that New England could not prove it was defrauded because it had knowledge of the underlying business transaction between Mr. Null and Calvert and specifically solicited the insurance to effectuate that transaction. The evidence shows that New England's agent originally contacted Calvert regarding life insurance for Null after learning of Calvert's unsuccessful application with Prudential. The agent first attempted to obtain a $500,000 policy on Victor Null's life from New England for Calvert's benefit. The company refused to issue more than $150,000 of such insurance. Calvert then told the agent that his business transaction with Null could not go forward with such a small amount of insurance. The agent discussed the situation with several other agents and suggested to Calvert and Victor Null the possibility of obtaining a personal insurance policy which Victor Null would be able to assign to Calvert. The agent, therefore, sought to contravene the company's directive by offering an alternative means of obtaining insurance which would be payable to the Calverts on Victor Null's death. The appellant argues that under these circumstances, New England cannot prove that it was in any way defrauded by the policy application. New England was aware of the business transaction between Calvert and Victor Null. New England, through its agents, supplied Calvert with the incentive to kill Victor Null by issuing insurance in an amount that exceeded Victor Null's worth to Calvert. New England allowed this in spite of its awareness of this risk, which it demonstrated by its refusal to issue more than $150,000 in business insurance. The appellant contends that New England may not show it was defrauded when its eagerness to sell the policy created the risk that resulted in Victor Null's death.

This argument is not unappealing. Historically, the law has looked with disfavor on insurance contracts which create a risk of death to the insured.

[I]t is contrary to a sound public policy to permit one, having no interest in the continuance of the life of another, to speculate upon that other's life—and it should be added that to permit the same might

tend to incite the crime of murder * * and that the rule is enforced, and the defense permitted, not in the interest of the defendant insurer, but solely for the sake of the law, and in the interest of a sound public policy[.]

*Henderson v. Life Ins. Co. of Virginia,* 176 S.C. 100, 179 S.E. 680, 692 (1935).

It is well settled that "to allow the creditor to procure insurance greatly exceeding the amount of the debt might be to tempt him to bring the debtor's life to an unnatural end, and thus contravene the principle of public policy which has been seen to lie at the very basis of the doctrine of insurable interest[.]" (Citation omitted.)

*Lakin v. Postal Life and Casualty Insurance Co.,* 316 S.W.2d 542, 551 (Mo.1958).

The courts have, therefore, voided life insurance policies which have encouraged the murder of the insured. *E. g., Henderson v. Life Ins. Co. of Virginia, supra; Lakin v. Postal Life and Casualty Insurance Co., supra.* These decisions have served the purpose of discouraging beneficiaries who plan a murder, but they do not have the effect of discouraging insurance companies from negligently issuing policies in contravention of the public interest. To reach this problem, the Supreme Courts of Alabama and South Carolina have allowed negligence actions against an insurer who negligently issues a life insurance policy which creates the risk of murder. *Liberty National Life Insurance Company v. Weldon,* 267 Ala. 171, 100 So.2d 696 (1957); *Ramey v. Carolina Life Insurance Company,* 244 S.C. 16, 135 S.E.2d 362 (1964). In *Weldon,* the court allowed a wrongful death action by the father of a minor child against three insurance companies which issued life insurance policies to the insured's aunt. The aunt, who had no insurable interest in the child's life, murdered the child. In *Ramey,* the South Carolina court allowed a suit against an insurance company by an insured who was severely injured by his wife, the owner-beneficiary of a life insurance policy, who attempted to poison him. The insurance company issued the policy without the insured's consent and with knowledge that his wife had forged his signature on the application. In both cases, the courts allowed proof of allegations that the negligent issuance of the policies was the proximate cause of the murders.

■ We have been unable, however, to find a decision in any state, including Missouri, which has permitted the estate of the insured to recover on the policy itself from an insurer which has negligently issued a policy. In *Lakin v. Postal Life and Casualty Insurance Co., supra,* the Missouri court held a life insurance policy obtained under somewhat similar circumstances void for want of an insurable interest. Although the argument the appellant makes here was not raised in *Lakin,* its facts support an inference that the agent solicited the policy with knowledge of the owner-beneficiary's true relationship with the insured and the lack of any insurable interest. We find no indication in that opinion, or in any other case, that the Missouri court would permit the estate of the insured to recover on the policy itself. In view of the fact that no Missouri decision is precisely on point, we would be prepared to distinguish *Lakin* if persuasive authority for a recovery by the estate on the policy could be discovered elsewhere. Since we find no such authority, we rely on the accepted rule that a life insurance policy is void *ab initio* when it is shown that the beneficiary thereof procured the policy with a present intention to murder the insured. *Mutual Life Ins. Co. v. Armstrong,* 177 U.S. 591, 6 S.Ct. 877, 880–881, 29 L.Ed. 997 (1886); *Colyer's Adm'r v. New York Life Ins. Co.,* 300 Ky. 189, 188 S.W.2d 313, 314 (Ky.App.1945); *Aetna Life Ins. Co. v. Strauch,* 179 Okl. 617, 67 P.2d 452, 453 (1937).

We do not, in this decision, express any opinion on the viability of a wrongful death action under the facts of this case, nor do we express an opinion on whether any limitations period applicable to such an action has been tolled.

As we stated in our disposition of the earlier appeal, the remaining issue is whether the beneficiary or the insured "procured"

the insurance policy; *i. e.,* whether Victor Null executed the application for his own purposes or was merely a pawn in the Calverts' plan. The District Court sitting without a jury found from the evidence that he did not execute the application for his own purposes. On appeal, we will not set aside the court's findings of fact unless they are "clearly erroneous." Fed.R.Civ.P. 52(a).

In Shirley Ann Null's earlier appeal from the adverse summary judgment, we noted two things: first, because New England's motion was primarily supported by evidence adduced in criminal proceedings against Ronald Calvert, Shirley Ann Null was not collaterally estopped from proving her husband's purpose in obtaining the insurance; and second, because the facts supported conflicting inferences about Victor Null's motives, summary judgment was inappropriate. *New England Mut. Life Ins. Co. v. Null, supra* at 901–902. In our opinion, we referred primarily to Shirley Ann Null's argument that she would prove Victor Null purchased the insurance with the purpose of benefiting his estate. Although Shirley Ann Null argues that she proved this matter at trial, she apparently does not contend that the District Court clearly erred in finding that Null had no intention of benefiting his estate at the time he procured the insurance.

■ Shirley Ann Null does contend, however, that the District Court erred n failing to consider whether Victor Null had a business purpose in obtaining the insurance. She argues that Victor Null desired the insurance policy so that he could assign it for the protection of the investors he so desperately needed, and that this furthered his own purposes as much as would benefiting his estate. The District Court heard the evidence offered on this issue, however, and found that "[t]he only reason that Null applied for the insurance was to obtain the coverage deemed necessary by the Calverts for their investment." We cannot say that the court clearly erred in making this finding. New England's insurance agent testified that he communicated his idea of ob-

taining the assignable personal insurance to Calvert and Victor Null after Calvert indicated to him that the underlying business transaction would not go forward if only the $150,000 business insurance policy were issued. There was no evidence that Victor Null applied for the insurance for a business purpose unrelated to the Calverts' secret objective. There was no evidence that Victor Null applied for the insurance with a plan to assign it to any backers other than the Calverts, nor was there any evidence that Victor Null intended to obtain such insurance prior to his negotiations with Calvert. The agent testified that at the time of Null's policy application, it was clear to Victor Null that the policy was to be assigned to James Calvert. On this evidence, we must affirm the District Court's factual finding that Victor Null's only reason for obtaining the insurance was because the Calverts deemed it necessary for him to do so. In so doing, we do not imply that Victor Null possessed no motivation for obtaining the insurance, or that he did not believe that he would benefit by so doing. That, however, is not determinative of the question because Victor Null had no motivation other than that supplied by the beneficiary who planned his murder. Victor Null, therefore, was not elevated beyond the status of a "mere instrumentality" in the Calverts' scheme.

■ The appellant's final contention is that the District Court erred in concluding that Calvert, not Victor Null, was the real party to the contract of insurance with New England. Shirley Ann Null argues that the facts of this case render it so unlike those cases from which the rule was derived that the court could not conclude that it applied so as to void the policy. We have addressed those portions of Shirley Ann Null's argument which attempt to establish that Victor Null applied for the insurance for his own purposes, and have indicated our approval of the District Court's findings on that issue. Because he was no more than an instrumentality in the Calverts' scheme, Victor Null was not the real party to the contract. Shirley Ann Null's reliance on

her husband's desire to obtain the policy as a ground for distinguishing this case from *Aetna Life Ins. Co. v. Strauch, supra; Lakin v. Postal Life and Casualty Insurance Co., supra;* and *Colyer's Adm'r v. New York Life Ins. Co., supra,* is misplaced because Victor Null's desire was created by the Calverts for the sole purpose of carrying out their plan.

For the foregoing reasons, the judgment of the District Court is affirmed.